FILED
United States Court of Appeals
Tenth Circuit

July 6, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

ANDRE IVORY,

     Defendant - Appellant.

No. 20-3179
(D.C. Nos. 2:04-CR-20044-KHV
and 2:20-CV-02156-KHV)
(D. Kan.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **HOLMES**, **BACHARACH**, and **MORITZ**, Circuit Judges.

Proceeding pro se,[1] Mr. Andre Ivory requests a certificate of appealability

("COA") to appeal the district court's denial of his second or successive 28 U.S.C. § 2255

motion. The sole authorized issue presented in Mr. Ivory's § 2255 motion is whether his

conviction under 18 U.S.C. § 924(c) should be vacated in light of the Supreme Court's

---

[*]      This Order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]      Because Mr. Ivory litigates this matter pro se, we construe his filings liberally but do not act as his advocate. *See United States v. Parker*, 720 F.3d 781, 784 n.1 (10th Cir. 2013) (citing *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008)).

decision in *United States v. Davis*, --- U.S. ----, 139 S. Ct. 2319 (2019).  We deny Mr.

Ivory's request for a COA and dismiss this matter.


**I**

Mr. Ivory was arrested on various drug charges in 2004 after an informant bought

crack cocaine from him.  While in custody, Mr. Ivory orchestrated a plan to kill the

informant.  Mr. Ivory's co-conspirators recruited a would-be assassin.  The hit failed: the

informant suffered severe injuries but survived.

In May 2005, a grand jury returned an 11-count superseding indictment.  It

charged Mr. Ivory with conspiracy to distribute or possess with intent to distribute more

than 50 grams of cocaine base in violation of 21 U.S.C. § 846 (Count 1), distributing

cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii) (Counts 2 through

6), possessing with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1)

and (b)(1)(B)(iii) (Count 7), conspiracy to kill a federal witness in violation of 18 U.S.C.

§§ 371 and 1512(k) (Count 8), attempting to kill a witness in violation of 18 U.S.C. §§ 2

and 1512(a)(1)(A) (Count 10), and using, carrying, and discharging a firearm during and

in relation to the commission of a crime of violence in violation of 18 U.S.C. § 924(c)(1)

(Count 11).  Mr. Ivory pleaded guilty to Counts 2 through 7.  A jury later acquitted him of

Count 1, but found him guilty of Counts 8, 10, and 11.  The jury was instructed that to

find Mr. Ivory guilty on Count 11, it had to find that he committed at least one of the two

predicate offenses—i.e., Count 8 or Count 10—and that a firearm was used, carried, possessed, brandished or discharged in relation to at least one of those crimes.

In May 2006, the district court sentenced Mr. Ivory to 360 months' imprisonment on Counts 2 and 3, life in prison on each of Counts 4 through 7, and 240 months' imprisonment on Counts 8 and 10. The court ordered these sentences to run concurrently with each other. As to Count 11, the court sentenced Mr. Ivory to 120 months' imprisonment and ordered that sentence to be served consecutively to his other terms of imprisonment. We affirmed Mr. Ivory's convictions and sentence. *See United States v. Ivory*, 532 F.3d 1095 (10th Cir. 2008). In 2009, Mr. Ivory filed an unsuccessful § 2255 motion to vacate his sentence. But in December 2019, we authorized Mr. Ivory to file a second or successive § 2255 motion to challenge his § 924(c) conviction and sentence (Count 11) based on the Supreme Court's decision in *Davis*, which struck down as unconstitutionally vague subsection (3)(B) of § 924(c)—the so-called residual clause.

Mr. Ivory filed his second or successive § 2255 motion in March 2020. The government conceded that, after *Davis*, conspiracy to kill a witness (Count 8) no longer qualified as a § 924(c)(3) crime of violence. And Mr. Ivory made two arguments in his § 2255 motion for why his § 924(c) conviction should be vacated in light of *Davis*. First, he argued that Count 10—attempting to kill a witness—also is not a crime of violence under § 924(c)(3). And he reasoned accordingly that neither Count 8 (as the government admitted) nor Count 10 could serve as a proper predicate offense for his § 924(c)

3

conviction.

Second, Mr. Ivory noted that the jury returned a general guilty verdict on Count 11; specifically, it did not indicate whether the predicate offense for the Count 11 conviction was the conspiracy to kill a witness (Count 8), the attempted killing of a witness (Count 10), or both offenses. Mr. Ivory argued that because it was now impossible to tell which predicate offense formed the basis for the jury's guilty verdict as to his § 924(c) offense and because a guilty verdict predicated on Count 8 would have been—as the government itself admitted—legally erroneous, then the district court must set aside the conviction to avoid the possibility that his Count 11 conviction rested on an improper foundation.

In a July 2020 order, the district court rejected both arguments. On the first argument, the court reasoned that the attempted killing of a witness (Count 10) falls within an alternative definition of a crime of violence set out in the so-called elements clause—that is, subsection (3)(A) of § 924(c). The court stated that the "attempt[]" offense unquestionably "has as an element the use, *attempted* use, or threatened use of physical force" against another. R., Vol. I, at 171 (Mem. and Order, filed July 8, 2020) (emphasis added) (citing 18 U.S.C. § 924(c)(3)(A)). On the second argument, the district court concluded that Mr. Ivory failed to show that including Count 8 as a potential predicate offense for Count 11 had a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 172 (quoting *Brecht v. Abrahamson*, 507 U.S. 619,

4

638 (1993)).[2]  The court based its holding on the fact that the government presented the same evidence—that is, testimony regarding a co-conspirator shooting the witness—for both Count 8 and Count 10.  Therefore, the court determined that it "cannot envision how the jury could have concluded that the firearm had been discharged in connection with only one of the two predicate offenses."  *Id.* at 173.

In its order dismissing Mr. Ivory's § 2255 motion, the district court also declined to grant Mr. Ivory a COA.  Mr. Ivory has timely sought a COA from us to appeal the district court's dismissal of his authorized second or successive § 2255 motion.

## II

We may grant a COA only if Mr. Ivory "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Because the COA inquiry "is not coextensive with a merits analysis," the "only question" at this stage "is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  *Buck v. Davis*, --- U.S. ----, 137 S. Ct. 759, 773 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).  In fact, if a court of appeals "first decid[es] the merits of an appeal, and then justif[ies] its

---

[2]    The district court accepted the government's concession that, in light of *Davis*, Count 8 was not a § 924(c) crime of violence; however, it did not expressly rule on the matter.

5

denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction." *Id.* (quoting *Miller-El*, 537 U.S. at 336–37).

In his application for a COA, Mr. Ivory first contends that the attempted killing of a witness, in violation of 18 U.S.C. § 1512(a)(1)(A), is not a "crime of violence" under the elements clause of § 924(c)(3). And he also argues, second, that, even if the attempted killing of a witness *is* a crime of violence, then we must still set aside his § 924(c) conviction because the general verdict that the jury returned did not stipulate whether the predicate offense for the conviction was a conspiracy to kill a witness (Count 8), the attempt to kill a witness (Count 10), or both offenses.[3]

Neither one of Mr. Ivory's arguments presents "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Reasonable jurists could not disagree with the district court's resolution of these two arguments or conclude that the arguments raised issues that deserved encouragement to proceed further. We address each argument in turn.

---

[3] In his application for a COA, Mr. Ivory often claims that there was insufficient evidence to support his conviction for attempting to kill a witness in violation of 18 U.S.C. § 1512(a)(1)(A). *See, e.g.*, Aplt.'s Br. at 4 ("There was insufficient evidence to support the intent element of the 18 U.S.C. [§§] 2 and 1512(a)(1)(A) conviction."); *id.* at 7 ("[T]here was insufficient evidence for a conviction on Count[] 10."). Mr. Ivory's sufficiency-of-the-evidence arguments, however, are not properly within the scope of the present proceeding. Our court authorized Mr. Ivory to file a second or successive § 2255 motion *only* to challenge his § 924(c) conviction in light of *Davis*. Mr. Ivory's contentions related to the sufficiency of the evidence to support his 18 U.S.C. § 1512(a)(1)(A) conviction are thus not properly before us in connection with this proceeding, and we will not address them further.

**A**

Mr. Ivory's first argument relies heavily on our decision in *United States v. Bowen*, 936 F.3d 1091 (10th Cir. 2019). In *Bowen*, we faced the issue of whether witness retaliation under 18 U.S.C. § 1513(b)(2)—a different statute than the one at issue here—was a § 924(c) crime of violence. We noted that § 1513(b)(2) criminalizes any witness retaliation that "causes bodily injury to another person or damages the tangible property of another person." *Bowen*, 936 F.3d at 1102. We then observed—citing to *Moncrieffe v. Holder*, 569 U.S. 184 (2013)—that "we must presume that Bowen's witness retaliation convictions rested upon the least of the acts criminalized" under § 1513(b)(2), i.e., damage to another person's tangible property. *Id.* at 1102–03. We concluded that damage to tangible property does not categorically entail the kind of "physical force" required under § 924(c)(3)(A) (i.e., the elements clause), and that therefore "witness retaliation under 18 U.S.C. § 1513(b)(2) [is not a crime of violence under that clause because it] does not 'ha[ve] as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" *Id.* at 1105 (quoting 18 U.S.C. § 924(c)(3)(A)).

Construing Mr. Ivory's brief liberally, he contends that we must presume—for purposes of our § 924(c) inquiry—that his conviction for attempted killing of a witness rested on the least of the acts criminalized under his statute of conviction. However, in discerning such acts, Mr. Ivory looks not to § 1512(a)(1)(A) as his statute of conviction;

7

instead, he characterizes § 1512 *as a whole* as his statute of conviction. He latches onto the title given to § 1512 in the U.S. Code: "Tampering with a witness, victim, or an informant." *See, e.g.*, Aplt.'s Br. at 7 (referencing 18 U.S.C. § 1512 broadly as the "Witness Tampering Statute"). And Mr. Ivory seems to reason that tampering with a witness does not categorically entail the kind of "physical force" required under § 924(c)(3)(A) (i.e., the elements clause)—because, for example, § 1512(b) prohibits witness tampering by way of "intimidation, threat[s], or corrupt[] persua[sion]." 18 U.S.C. § 1512(b). In short, Mr. Ivory suggests that we must presume that his Count 11 conviction was actually a conviction for the least of the acts criminalized by § 1512, which enumerates many forms of witness tampering that (at least arguably) do not categorically entail the use the requisite physical force. Mr. Ivory's argument, however, is misguided.

*Bowen* is indeed instructive—but *not* instructive in a manner that helps Mr. Ivory. The decision actually bolsters our conclusion that reasonable jurists could not disagree with the district court's conclusion that attempted killing of a witness is a § 924(c) crime of violence.

In *Bowen*, we presumed that Mr. Bowen's witness retaliation convictions rested on the least of the acts criminalized under § 1513(b)(2) and identified that conduct as involving retaliation through damage to another person's tangible property. In the course of discerning the least of the acts, we "easily conclude[d] that witness retaliation *through*

8

*bodily injury* qualifies as a crime of violence under § 924(c)(3)'s elements clause." *Bowen*, 936 F.3d at 1103 (emphasis added). We noted that "physical force" in § 924(c)(3)(A) means "force capable of causing physical pain or injury to another person." *Id.* (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)). And we concluded that "a crime that requires knowingly causing or threatening to cause bodily injury to another necessarily has as an element the use or threatened use o[f] [such] physical force." *Id.*

This reasoning of *Bowen* does not avail Mr. Ivory's cause here. Suffice to say that, if under *Bowen*, a crime of threatening to cause bodily *injury* to a witness satisfies the elements clause of § 924(c) because it involves the requisite physical force, it follows ineluctably that no reasonable jurist could disagree with the district court's determination that the attempted *killing* of a witness also satisfies the elements clause (which expressly contemplates attempts) and meets the test of physical force.

Moreover, Mr. Ivory's attempt to characterize § 1512, as a whole—and not, more specifically, § 1512(a)(1)(A)—as his statute of conviction for purposes of determining the least acts criminalized is wholly unpersuasive. The Supreme Court has explained that when a single statute "contain[s] several different crimes, each described separately . . . a court may determine which particular offense the [defendant] was convicted of by examining the charging document and jury instructions, or in the case of a guilty plea, the plea agreement, plea colloquy, or 'some comparable judicial record of the factual basis

9

for the plea.'" *Moncrieffe*, 569 U.S. at 191 (quoting *Nijhawan v. Holder*, 557 U.S. 29, 35 (2009)).

And the language and structure of § 1512 make clear that it sets forth separate crimes. *See United States v. Banks*, 884 F.3d 998, 1021–22 (10th Cir. 2018); *accord United States v. Mathis*, 932 F.3d 242, 265 n.21 (4th Cir. 2019) (noting that § 1512 is divisible); *see also United States v. Edwards*, 836 F.3d 831, 833 (7th Cir. 2016) ("The Supreme Court recently clarified that a statute is considered divisible only if it creates multiple offenses by setting forth alternative *elements*." (citing *United States v. Mathis*, --- U.S. ----, 136 S. Ct. 2243 (2016))). Further, the pertinent parts of the record leave no doubt which of § 1512's separate crimes Mr. Ivory was convicted of—attempt to kill a witness, proscribed by § 1512(a)(1)(A). The operative superseding indictment explicitly charged Mr. Ivory in Count 10 with violating § 1512(a)(1)(A); it did not refer generally to § 1512. *See* Dist. Ct. Doc. 213 at 12–13 (Third Superseding Indictment, filed May 26, 2005).[4] And the jury instruction concerning Count 10 likewise unambiguously stated that Mr. Ivory was charged with violating § 1512(a)(1)(A). *See* Dist. Ct. Doc. 370 at 47

---

[4] As we are permitted to do in circumstances such as these, we take judicial notice of records in the district court's files pertaining to Mr. Ivory's criminal case. *See, e.g.*, *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("Although we are not obliged to do so, we may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand." (citing *St. Louis Baptist Temple v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979))).

(Instr. to the Jury, filed Dec. 13, 2005) (Instr. 35).

Therefore, insofar as Mr. Ivory advances this least-acts-criminalized argument with the aim of undercutting the district court's conclusion that the offense charged in Count 10 satisfies the elements clause—and, consequently, is a crime of violence—his efforts are in vain. No jurist of reason could disagree with the district court's determination that the attempted killing of a witness is a crime of violence under the elements clause of § 924(c).

**B**

Mr. Ivory's second argument likewise does not make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Mr. Ivory correctly notes that the jury returned a general guilty verdict on his § 924(c) conviction; it did not specifically find whether the predicate offense was conspiracy to kill a witness (Count 8), attempted killing of a witness (Count 10), or both offenses. Before the district court, the government conceded that, in light of *Davis*, Count 8 is not a valid predicate offense for a § 924(c) conviction. For purposes of our analysis, even if we assume that the government is correct about this,[5] Mr. Ivory still fails to show that the erroneous inclusion of Count 8

---

[5]    Although we have stated that "conspiring to retaliate against a witness [under a separate statute, § 1513(b)(2)] does not qualify as a crime of violence under § 924(c)(3)(A)," *Bowen*, 936 F.3d at 105 n.9, we have no binding precedent holding that conspiracy to kill a federal witness under § 1512(k) (i.e., Count 8) is *not* a crime of violence. By virtue of its concession, the government has effectively agreed with Mr. Ivory's position that such a conspiracy is not a crime of violence. Due to the parties' agreement on this matter, like the district court, we decline to definitively opine ourselves

11

as a possible predict offense for Count 11 had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 638.[6]

No reasonable jurist could disagree with the district court's determination that the jury could not have concluded "that the firearm had been discharged in connection with only one of the two predicate offenses," e.g., that it had been discharged only in connection with (what we assume to be an improper predicate offense) Count 8—and *not* also Count 10. R., Vol. I, at 173. As the district court reasoned, the government relied on the same evidence to establish the discharge of the firearm for both Count 8 and Count 10. Therefore, in light of the evidence before it, the jury's guilty verdict for the § 924(c) offense necessarily rested on a finding that *both* Count 8 and Count 10 were crimes of

on it. That is, for purposes of resolving this appeal, we rely upon the parties' agreement that conspiracy to kill a witness (i.e., Count 8) is not a § 924(c) crime of violence.

[6]      We note that the applicable standard of review is different when considering a direct appeal involving a preserved error pertaining to jury instructions that permit a conviction on alternative theories—where one is valid and the other is not. In that context, a general verdict must be set aside when "it is impossible to tell which ground the jury selected." *United States v. Samora*, 954 F.3d 1286, 1295 (10th Cir. 2020) (quoting *Yates v. United States*, 354 U.S. 298, 312 (1957)). "[R]eversal is required for constitutional error unless the error was 'harmless beyond a reasonable doubt.'" *Malone v. Carpenter*, 911 F.3d 1022, 1029 (10th Cir. 2018) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). However, on habeas review, "constitutional error may be disregarded *unless* found to have 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Underwood v. Royal*, 894 F.3d 1154, 1175 (10th Cir. 2018) (emphasis added) (quoting *Brecht*, 507 U.S. at 638). Mr. Ivory occasionally invokes the direct-appeal standard instead of the habeas-review standard. *See, e.g.*, Aplt.'s Br. at 6 (citing a direct appeal case, *United States v. Rosemond*, 695 F.3d 1151, 1154 (10th Cir. 2012)). Here, we apply the standard appropriate in this habeas setting—that is, "the less-onerous *Brecht* standard." *Acosta v. Raemisch*, 877 F.3d 918, 933 (10th Cir. 2017).

violence supporting the offense. In short, the jury's verdict necessarily rested on at least one offense that was properly characterized as a crime of violence (i.e., Count 10), and (as relevant here) that was all that was required for the § 924(c) conviction to be legally sound. Indeed, the district court's jury instructions expressly said as much.

Mr. Ivory's arguments to the contrary amount to no more than conclusory allegations. *See, e.g.*, Aplt.'s Br. at 11 ("[E]ven if one of the statutes in Count[s] 8 or 10 can be conc[ei]ved as a crime of violence, [Mr. Ivory's] convictions and sentence must still be vacated due to the jury's general verdict of guilty, *possibly using* an invalid alternative theory." (emphasis added)). Indeed, Mr. Ivory's contentions on this issue have the effect of undercutting his assertion that the instructional error should lead to reversal. For example, he states that the two "predicate crimes [i.e., Count 8 and Count 10] seem or are inextricably intertwined. In other words, it is difficult to see how a jury would have concluded that [Mr. Ivory] was guilty of using a firearm during and in furtherance of the underlying attempt predicate [i.e., Count 10] without at the same time also concluding that he did so during and in furtherance of the underlying [c]onspiracy and [a]iding and [a]betting predicates [i.e., Count 8]." *Id.* at 6. Mr. Ivory draws from this line of reasoning that his Count 11 conviction must be set aside. However, no reasonable jurist would reach that conclusion.

In fact, Mr. Ivory's reasoning is consistent with and supports a very similar observation that the district court made regarding the intertwined nature of the offenses

13

charged in Counts 8 and 10. Yet, that observation led the district court to reach the opposite conclusion than Mr. Ivory regarding the need for reversal—a conclusion that reasonable jurists would not disagree with. Recall that the court found that the evidence used to prove those two intertwined counts was the same and concluded that a reasonable jury could not have predicated its § 924(c) guilty verdict on the Count 8 offense (which we assume is *not* a crime of violence) without *also* predicating that verdict on the Count 10 offense (which we have shown *is* a crime of violence). And reasonable jurists could not disagree with this reasoning or the district court's ultimate conclusion.

In sum, we conclude that no reasonable jurist could be in "'grave doubt' about the effect of the [assumed instructional] error on the jury's verdict." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). That is, they could not disagree with the district court's conclusion that this assumed error did not have a "substantial and injurious effect or influence in determining the jury's verdict" on Count 11. *Brecht*, 507 U.S. at 638.

**III**

For the foregoing reasons, we **DENY** Mr. Ivory's request for a COA and **DISMISS** this matter.

ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge