**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 8, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

FERNANDO MIGUEL SAMORA,

    Defendant - Appellant.

No. 19-4070
(D.C. No. 2:17-CR-00637-JNP-1)
(D. Utah)

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:17-CR-00637-JNP-1)**
_____

Ryan D. Tenney, Assistant United States Attorney (John W. Huber, United States Attorney, with him on the briefs), Salt Lake City, Utah, for Plaintiff-Appellee.

Jessica Stengel, Assistant Federal Public Defender (Scott Keith Wilson, Federal Public Defender, with her on the briefs), Salt Lake City, Utah, for Defendant-Appellant.
_____

Before **BACHARACH**, **BALDOCK**, and **MURPHY**, Circuit Judges.
_____

**BALDOCK**, Circuit Judge.
_____

On May 26, 2017, officers from a multi-agency task force located Defendant to arrest him on an outstanding warrant. That day, Defendant had borrowed his ex-girlfriend's car and drove it alone to a restaurant. When Defendant left the restaurant and approached the vehicle, the officers converged to arrest him. Defendant fled on

foot and a chase ensued. After the officers caught and arrested Defendant, they searched the vehicle he had been driving and found a loaded firearm inside the center console. The Government charged Defendant with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Defendant proceeded to trial where the district court gave an erroneous instruction on constructive possession.[1] The jury returned a guilty verdict and Defendant appeals. Specifically, Defendant argues: (1) the Government presented insufficient evidence to sustain his conviction, and (2) even if the Government presented sufficient evidence, the failure to properly instruct the jury constitutes plain error requiring remand for a new trial. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reverse and remand for a new trial.

## I.

We turn first to Defendant's insufficiency-of-the-evidence claim. We review the sufficiency of the evidence de novo, applying the law in effect at the time of trial, to determine whether a rational jury could find the defendant guilty beyond a reasonable doubt. *United States v. Benford*, 875 F.3d 1007, 1014 (10th Cir. 2017). We consider all the evidence, both direct and circumstantial, along with reasonable inferences taken therefrom, in the light most favorable to the government. *United*

---

[1] Although counsel for Defendant and the Government tendered the correct jury instruction, the district court substituted its constructive possession instruction for that of the parties. Neither party objected to the change in the instruction. This appears to be a reoccurring problem in the District of Utah, as we have heard oral argument on two cases this year in which the district court gave an erroneous instruction on constructive possession. *See United States v. Gomez-Castro*, 2:16-CR-00267-DN-1 (D. Utah 2018), *appeal docketed*, Case No. 18-4090 (10th Cir. June 14, 2018).

*States v. Jameson*, 478 F.3d 1204, 1208 (10th Cir. 2007). Nevertheless, we will not "uphold a conviction obtained by piling inference upon inference." *Id.* (quoting *United States v. Anderson*, 189 F.3d 1228, 1239 (10th Cir. 1999)). Instead, there must be "substantial evidence supporting a conviction that does more than raise a mere suspicion of guilt." *Id.*

To convict a person of being a felon in possession in violation of § 922(g)(1), the government must prove: (1) the person had previously been convicted of a felony; (2) he thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate commerce. *Benford*, 875 F.3d at 1015. The only element at issue is whether Defendant knowingly possessed a firearm.

Possession under § 922(g)(1) can be actual or constructive. *Id.* Actual possession occurs where "a person has direct physical control over a firearm at a given time." *Jameson*, 478 F.3d at 1209. Thus, to convict on actual possession, the defendant must have held the firearm "for a mere second or two" during the time specified in the indictment. *United States v. Adkins*, 196 F.3d 1112, 1115 (10th Cir. 1999). Constructive possession occurs "when a person not in actual possession knowingly has the power and intent to exercise dominion and control over [a firearm]." *United States v. Little*, 829 F.3d 1177, 1182 (10th Cir. 2016). Knowledge, dominion, and control can be inferred when a defendant has exclusive control over the premises in which the firearm was found. *Jameson*, 478 F.3d at 1209. But when "a defendant jointly occupies the premises on which the firearm is found, we have required the government to show a nexus between the defendant and the firearm . . ." *Benford*, 875 F.3d at 1015.

3

In this case, although the evidence is by no means overwhelming, the Government presented sufficient evidence for a rational jury to find Defendant constructively possessed the firearm at issue.[2] As an initial matter, Defendant was the sole occupant of the vehicle in which officers located the firearm. The Government presented evidence that Defendant borrowed the vehicle from his ex-girlfriend earlier in the day, drove it alone to a restaurant, and left the restaurant alone to return to the vehicle before he was arrested. Thus, Defendant had sole possession of the vehicle in the hours leading up to Defendant's arrest and discovery of the firearm. Officers found the firearm in the center console of that vehicle and Defendant's wallet in the driver's side door.

Nevertheless, because Defendant borrowed the car from his ex-girlfriend, we consider this a joint occupancy case.[3] *See United States v. Hishaw*, 235 F.3d 565, 572 (10th Cir. 2000) (applying the joint occupancy rule where the defendant was the sole occupant of his brother's friend's vehicle). Thus, the Government was required to show some nexus between Defendant and the firearm that supports a "plausible inference that the defendant had knowledge of and access to the weapon or

---

[2] We need not address the sufficiency of the evidence with respect to actual possession because we conclude that the evidence of constructive possession was sufficient.

[3] In this vein, Defendant argues the firearm belonged to his ex-girlfriend, Ms. Hernandez. Ms. Hernandez testified the gun belonged to her and she had placed it in the center console a couple days before letting Defendant borrow the car. At the same time, however, Ms. Hernandez could not identify the make or model of the firearm. She also testified she kept the firearm for home security, and yet, it was found in her car. On these grounds, the jury might have found her testimony less than credible.

4

contraband." *Id.* at 571 (quoting *United States v. Mills*, 29 F.3d 545, 550 (10th Cir. 1994)); *see also United States v. Hooks*, 551 F.3d 1205, 1212 (10th Cir. 2009) (knowledge may be "inferred from circumstantial evidence, so long as the circumstantial evidence includes something other than mere proximity").

Defendant relies in part upon *Hishaw* to argue the Government did not demonstrate a sufficient nexus between Defendant and the firearm to sustain a conviction based upon constructive possession. In *Hishaw*, police stopped the defendant for a traffic violation. 235 F.3d at 567. The defendant was the sole occupant of the vehicle, which belonged to his brother's friend. *Id.* at 572. Upon a search of the vehicle, the officers located a firearm under the passenger seat. *Id.* at 567. The only other evidence linking the defendant to the firearm was testimony that the defendant had handled firearms on several occasions two years prior to the charged offense. *Id.* at 573. Because the defendant had several drug charges, the government also argued "drugs and guns often go together." *Id.* We vacated the conviction, holding the evidence was "simply too remote and too vague to support the inference that [the defendant] constructively possessed the pistol." *Id.* at 572.

While *Hishaw* is comparable to the instant matter, it is readily distinguishable on two grounds. First, the officers in *Hishaw* located the firearm under the passenger seat, whereas the firearm in this case was found in the center console. This distinction is meaningful. While the floorboard under the passenger seat is not within arm's reach of the driver of the vehicle, the center console was readily accessible to Defendant here. *Cf. Benford*, 875 F.3d at 1015 (finding it relevant that the firearm was located

5

"two-and-a-half feet" from the defendant's bed).  Second, and more importantly, the government in *Hishaw* lacked the DNA evidence present in the case before us.  This DNA evidence provides the necessary nexus to link Defendant to the firearm and establish constructive possession.

Here, the Government presented expert testimony that the firearm contained DNA from at least three individuals.  But the DNA expert explained Defendant contributed the most DNA to the firearm, making his DNA the "major profile" on the gun.[4]  Because Defendant's DNA matched the major profile on the firearm, the DNA expert concluded Defendant likely handled the gun at some point.[5]

While the government in *Hishaw* presented evidence that the defendant handled firearms generally, that evidence is far less probative than the DNA evidence in this case.  The evidence in *Hishaw* showed the defendant handled firearms—not necessarily the firearm at issue—two years prior to the charged offense.  *See Hishaw*, 235 F.3d at

---

[4] The Government's DNA expert concluded it was highly improbable someone other than Defendant matched the "major profile" on the firearm.  Nevertheless, Defendant suggests his daughter's DNA could have transferred to the firearm, making it appear as though Defendant's DNA was the major profile when in fact it was not.  Defense counsel presented the jury with this alternative theory at trial, and the jury decided what to believe.  Because the jury is well-equipped to weigh and evaluate the DNA evidence, we will not second guess the jury's fact-finding on appeal.

[5] Defendant further argues his DNA may have been transferred to the firearm by secondary transfer.  That is, Defendant suggests he touched someone who then touched the firearm, or he sneezed while in the presence of the firearm, thereby transferring his DNA to the firearm.  By this argument, Defendant may have never actually handled the gun.  The DNA expert concluded this was unlikely, and in any event, it is again within the province of the jury to weigh the evidence and decide how to credit the expert's testimony.

573. In this case, the evidence showed Defendant handled the specific firearm at issue, and because Defendant's DNA matched the major profile on the firearm, it is reasonable for the jury to infer Defendant handled the firearm more recently than two years ago. While the Government's expert testified the DNA evidence was degraded, due in part to passage of time, neither party elicited testimony as to how much time must have passed since Defendant handled the firearm. This is a question of fact for the jury.

This DNA evidence, absent in *Hishaw*, provides a nexus between Defendant and the firearm. *See Benford*, 875 F.3d at 1021 (holding evidence that the defendant handled a firearm "may provide circumstantial evidence of the ability and intent to exercise control over the firearm necessary to establish constructive possession"). The DNA combined with Defendant's proximity to the firearm—as he was the sole occupant of the vehicle on the day the firearm was found in the center console—is sufficient to establish Defendant's constructive possession of the firearm.[6] Thus, while the evidence is far from overwhelming, the Government presented sufficient evidence to sustain Defendant's § 922(g)(1) conviction.

---

[6] The Government argues Defendant's flight from law enforcement also bears upon Defendant's knowledge of the firearm. We disagree. Defendant's flight has little, if any, persuasive value. While evidence of flight may show consciousness of guilt, *see United States v. Martinez*, 681 F.2d 1248, 1256 (10th Cir. 1982), it is equally likely Defendant fled in this case because he had an outstanding warrant for his arrest.

II.

While we find the Government presented sufficient evidence to sustain Defendant's conviction, Defendant argues we must nevertheless remand for a new trial because the district court improperly instructed the jury on constructive possession. Specifically, Defendant argues the district court erred when it failed to instruct the jury that Defendant must have intended to exercise control over the firearm in order to convict on a constructive possession theory.

As our precedents clearly provide, the Supreme Court's decision in *Henderson v. United States*, 135 S. Ct. 1780 (2015), "change[d] the law of constructive possession in our circuit" so that "constructive possession requires both the power to control an object *and intent to exercise that control*." *Benford*, 875 F.3d at 1016 (quoting *Little*, 829 F.3d at 1182). Although the district court omitted the intent element in its instruction, Defendant failed to object. Accordingly, we review for plain error.

To prevail on plain-error review, Defendant must establish: (1) the district court committed error; (2) the error is plain; and (3) the error affected his substantial rights. *Id.* Once Defendant satisfies these three prongs, we will exercise our "discretion to correct the error if it 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016)). We apply plain error "less rigidly when reviewing a potential constitutional error," *United States v. James*, 257 F.3d 1173, 1182 (10th Cir. 2001), as is the case here because "an improper instruction on an element of the offense violates

8

the Sixth Amendment's jury trial guarantee." *Neder v. United States*, 527 U.S. 1, 12 (1999).

In this case, the Government concedes Defendant has established the first two prongs of the plain-error test. We agree. The district court instructed the jury that "[c]onstructive possession exists when a person knowingly holds the power and ability to exercise dominion and control over a firearm." ROA Vol. 1 at 249. The law is clear, however, that constructive possession also requires Defendant have the intent to exercise control over the firearm. *See Henderson*, 575 U.S. at 1784; *see also Little*, 829 F.3d at 1182. The district court's failure to instruct the jury on the intent element is error, and that error is plain because it is "clearly contrary to the law at the time of appeal." *Johnson v. United States*, 520 U.S. 461, 468 (1997). Therefore, we turn to prong three of the plain-error test.

Under the third prong of the plain-error test, Defendant must show the error affected his substantial rights. *Benford*, 875 F.3d at 1017. To demonstrate the error affected his substantial rights, Defendant must "'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *Id.* (quoting *Molina-Martinez*, 136 S. Ct. at 1343). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Wolfname*, 835 F.3d 1214, 1222 (10th Cir. 2016) (quoting *United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014)). In the case of an erroneous jury instruction "on the principal elements of the offense," we often conclude that the error

9

affected the outcome of the proceedings. *Benford*, 875 F.3d at 1017 (quoting *United States v. Duran*, 133 F.3d 1324, 1333 (10th Cir. 1998)).

Given the particular facts of this case, we find a reasonable probability exists that, had the jury been instructed on the intent element, it would not have convicted Defendant. We have summarized the evidence above, and we need not repeat that summary here. Suffice it to say, the Government's case is not so strong as to convince us that the jury would have been "compelled to conclude" that Defendant intended to exercise dominion and control over the firearm. *Cf. Little*, 829 F.3d at 1183 (applying the harmless error standard and finding a jury would have been "compelled to conclude" the defendant intended to exercise control over the firearm). We need look no further than *United States v. Simpson*, 845 F.3d 1039 (10th Cir. 2017), and *Benford* to reach this conclusion. In each of these cases, the district court omitted the intent element of the constructive possession instruction, counsel did not object to the erroneous instruction, and we reviewed for plain error. And in each case, we held the error affected the defendant's substantial rights and therefore reversed.

Turning to the specifics of these cases, in *Simpson*, law enforcement located firearms and ammunition in places the defendant "jointly occupied" with his wife. 845 F.3d at 1061. The government presented evidence that the defendant had brandished firearms in the past, and the defendant admitted to holding each of the handguns at issue. *Id.* at 1062. Despite this relatively strong evidence, we held "there is a reasonable probability that the outcome would have been different with a correct jury instruction." *Id.*

10

In *Benford*, officers searched the defendant's apartment that he shared with his girlfriend and found a firearm in the master bedroom. 875 F.3d at 1011. After officers confronted the defendant about the discovery of the firearm, the defendant "registered no surprise" and stated, "I guess I'll have to take the charge." *Id.* The government also presented evidence that the defendant brandished a firearm nineteen days prior to the charged offense. *Id.* at 1011–12. Finally, the government presented a text exchange from three months prior which implied the defendant would trade firearms for a motor.[7] *Id.* at 1011. Based on this evidence, we held a jury would not "be compelled to find" the defendant intended to exercise control over the firearm and remanded for a new trial. *Id.* at 1018.

This case is bound by *Simpson* and *Benford*. Like *Simpson* and *Benford*, the Government presented evidence that Defendant jointly occupied the space in which the firearm was found with his ex-girlfriend. *See Benford*, 875 F.3d at 1011 (finding the defendant occupied the apartment with his girlfriend), and *Simpson*, 845 F.3d at 1061 (finding the defendant occupied the spaces where the firearms were found with his wife). The Government also demonstrated that Defendant had handled the firearm at some point, as established by the DNA evidence. *See Benford*, 875 F.3d at 1011–12

---

[7] The specific text exchange was as follows. The defendant text someone about a motor for sale and asked what he could trade for it. *Benford*, 875 F.3d at 1011. The seller responded, "Guns, tools, lathe and/or mill tooling. H-D stuff." *Id.* The defendant asked what kind of guns, and the seller responded, "Concealed carry or a 12 ga." The defendant replied, "I got some nice toys ;)" and promised to get back to the seller the next day. *Id.* Although the defendant disputed what he meant by "some nice toys," the testimony at trial showed the defendant probably meant firearms.

(finding the defendant brandished a firearm 19 days prior to the charged offense and implied he had firearms available for trade via text messages three months prior to the charged offense), and *Simpson*, 845 F.3d at 1062 (finding the defendant admitted to handling the firearms at issue prior to the charged offense). This evidence without more, however, is not sufficient to convince us that the jury would have reached the same conclusion if properly instructed.

None of the Government's cited authority convinces us otherwise. The Government maintains Defendant's conviction should be upheld based on *Little*, *United States v. Campbell*, 763 F. App'x 745 (10th Cir. 2019), and *United States v. Martinez*, 749 F. App'x 698 (10th Cir. 2018). In each of these cases, the Government's evidence was significantly stronger than the case before us. For example, in *Little*, the defendant was suspected of stealing seven guns. 829 F.3d at 1180. Officers obtained a search warrant for the defendant's six-by-eight foot "well house." *Id.* The defendant lived alone in the house. *Id.* Officers found two firearms in the well house matching firearms stolen in the burglary. *Id.* We affirmed the conviction, finding a reasonable jury would be "compelled to conclude" that the defendant intended to exercise control over the weapons because: (1) the defendant had exclusive possession of the well house and was the sole occupant; (2) the defendant registered surprise that law enforcement only found two firearms; and (3) the officers observed the defendant leave the well house and, upon entering the house thereafter, saw plainly visible ammunition and firearms. *Id.* at 1183. Because the evidence in *Little* was overwhelming, *Little* offers

12

little to our analysis here.[8]  Bound by *Simpson* and *Benford*, and presented with no authority that convinces us otherwise, we thus conclude the instructional error affected Defendant's substantial rights.

Nevertheless, the Government urges us to affirm Defendant's conviction on alternate grounds.  Specifically, the Government argues we can affirm the conviction because the jury was properly instructed on actual possession, and the Government proved Defendant actually possessed the gun.  Thus, the Government argues "this alternative theory of guilt was unaffected by any error regarding constructive possession."  Appellee Br. at 20.  We are not persuaded.

Generally, when the court's instructions permit the jury to convict on alternative theories, one of which is valid and one of which is legally erroneous, a general verdict must be set aside when the verdict is supported on one ground but not on the other "and it is impossible to tell which ground the jury selected." *Yates v. United States*, 354 U.S. 298, 312 (1957), *overruled in part on other grounds by Burks v. United States*, 437 U.S. 1, and *Griffin v. United States*, 502 U.S. 46 (1991).  But on plain-error review, the inquiry differs markedly.  *United States v. Sorensen*, 801 F.3d 1217, 1238–39 (10th Cir. 2015).  "Instead, we apply the substantial-rights test and consider the strength of the government's case."  *Id.* at 1239 (citing *United States v. Wood*, 384 F. App'x 698, 709 (10th Cir. 2010) (unpublished)).

---

[8] The evidence was similarly overwhelming in *Campbell* and *Martinez*, both of which are unpublished cases.

In this case, the Government's evidence supporting actual possession is weak. To prove actual possession, the Government was required to show Defendant held the firearm on the date specified in the indictment. *See Benford*, 875 F.3d at 1020–21 (holding that "evidence that the defendant actually handled a firearm outside the indictment period does not suffice to show actual possession"). In this case, the Government presented DNA evidence tending to show Defendant handled the firearm at some point, but the DNA evidence did not establish Defendant handled the firearm on or about May 26, 2017. Because the Government's evidence demonstrating actual possession is weak, the fact that the jury was properly instructed as to actual possession is of no moment. There is still a reasonable probability that, had the jury been properly instructed on constructive possession, it would not have convicted Defendant.

Finally, turning to the fourth prong of plain-error review, we consider whether the error seriously affects the fairness, integrity or public reputation of judicial proceedings. *Id.* at 1016. While a district court's failure to properly instruct the jury "won't always satisfy the fourth prong of the plain-error test," when the evidence of an omitted element is "neither overwhelming nor uncontroverted," the fourth prong is met. *Wolfname*, 835 F.3d at 1223. As we have previously explained, the evidence regarding Defendant's intent is not overwhelming or uncontroverted. Thus, the erroneous jury instruction "may have allowed the jury to convict without requiring the government to prove all elements of the crime beyond a reasonable doubt." *Benford*, 875 F.3d at 1021. "In light of the revered status of the beyond-a-reasonable-doubt standard in our criminal jurisprudence, a jury instruction that allows a conviction where

14

one important element may not have been found against the defendant by such a standard cannot be overlooked." *Duran*, 133 F.3d at 1334. Therefore, we hold the fourth prong of plain-error review is met.

## III.

For the reasons provided herein, we REVERSE and REMAND for a new trial based on the plainly erroneous jury instruction. Judge Bacharach joins except for footnote one.

19-4070, <u>United States v. Samora</u>
**MURPHY**, J., dissenting.

Because I do not agree that Samora has met his burden under the third prong of the plain error test, I dissent. In its recitation of evidence supporting constructive possession, the majority limits its consideration to Samora's joint occupation of his former girlfriend's vehicle and his handling of the firearm at some point in time. Majority Op. at 11. The evidence, however, is not so limited. Samora's former girlfriend, Maria Hernandez, was called as a defense witness and her testimony is key to the constructive possession issue.

Hernandez testified the firearm found in the vehicle was given to her several years before Samora's arrest. She further testified she used the gun for protection, storing it both in her home and in the console of her vehicle. Hernandez stated she was not romantically involved with Samora at the time of his arrest and the only people she lived with were her daughter, mother, and stepfather. Finally, she testified Samora borrows her vehicle six to seven times a month for a "couple of hours" each time.

When Hernandez's testimony is coupled with the fact Samora's DNA was found on the firearm, a reasonable jury would be compelled to find that Samora handled the weapon while it was in the vehicle. Hernandez's testimony established that she often left the weapon in the center console of her car and Samora consistently borrowed the vehicle for hours at a time. Because Samora's wallet was found in the driver's side door, indicating he stored his possessions in

the vehicle, it is clearly reasonable to infer that Samora opened the center console—an obvious place to store possessions—during one of the many times the firearm was in the vehicle. But a jury would not have to draw inferences to reach this conclusion because Samora's DNA was actually found on the weapon. Because Hernandez (1) only kept the gun in her home or in her car and (2) Samora did not live with Hernandez and was not romantically involved with her, the only reasonable conclusion to draw is that Samora handled[1] the gun when it was in the vehicle.

In *United States v. Little*, we held that a reasonable jury would be compelled to convict the defendant of constructive possession—despite being erroneously instructed on the intent element of the crime—because of the strength of the evidence. 829 F.3d 1177, 1183-84 (10th Cir. 2016). In *Little*, law enforcement discovered ammunition and firearms in an extremely small "well house" rented by the defendant from another individual. *Id*. at 1180. The evidence showed the defendant had exclusive control of the well house at the time the firearms were discovered, shotgun shells were plainly visible on a shelf, the firearms were found on or under the defendant's bed, and the defendant had been alone in the well house for "at least seven and a half minutes" when officers

---

[1] As the majority notes, the jury rejected Samora's arguments that it was not his DNA on the weapon or that his DNA was transferred to the gun by secondary transfer. Majority Op. at 6.

-2-

arrived.  *Id*. at 1180-81, 1183.  The evidence of constructive possession in this case is just as strong as the evidence presented in *Little*.  If Hernandez testified truthfully, the evidence established: (1) on the day of his arrest, Samora had been alone in the car for several hours; (2) the firearm was discovered in the center console of the vehicle, immediately adjacent to where Samora was sitting; and (3) Samora knew the gun was in the vehicle and knew how to access it on the day of his arrest because he had previously exercised control over it while it was in the vehicle.

In *United States v. Benford,* we noted that evidence a "defendant actually handled a firearm outside the indictment period . . . may provide circumstantial evidence of . . . intent to exercise control over the firearm necessary to establish constructive possession."  875 F.3d 1007, 1020-21 (10th Cir. 2016).  Here, the evidence did not merely show Samora actually handled the firearm at some point before his arrest.  It established he handled the gun while in the car.  As in *Little*, based on the strength of this evidence "there is no reasonable possibility that the jury would have found that [Samora] had knowledge of the weapon[] at issue but lacked intent to exercise control over [it]."  *See* 829 F.3d at 1183.  Thus, a reasonable jury properly instructed on the intent element of constructive possession would be compelled to convict Samora.

The alternative, of course, is that the jury wholly disbelieved Hernandez.

In that case, the only explanation for the presence of the gun in the vehicle is that Samora placed it there. Again, this would compel his conviction.

Samora's conviction should be affirmed.