FILED
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**July 29, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DENNIS DEAN NEFF,

    Defendant - Appellant.

No. 21-3013
(D.C. No. 5:19-CR-40015-DDC-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT***
_____

Before **HARTZ**, **SEYMOUR**, and **MORITZ**, Circuit Judges.
_____

Dennis Neff appeals his convictions for two firearm-possession offenses, arguing that the district court plainly erred when instructing the jury on the definition of constructive possession. We agree that the district court made an obvious error but nevertheless affirm Neff's convictions because the instruction did not affect his substantial rights.

**Background**

Neff's convictions stem from a November 2018 incident at Teri Secrest's house. At the time, Secrest lived at the house with her adult son, Derrick Hainline,

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

and his girlfriend, Valerie Matic. Secrest had recently found syringes on the property and was concerned because several strangers who she believed were drug users had been visiting Hainline and Matic at the house. So when Neff—whom Secrest had never met—walked into the house unannounced on November 27, she called the police.

Before the police arrived, Neff hung out with Hainline and Matic in their bedroom. During this time, Neff and Hainline smoked some methamphetamine that Neff brought with him in a small black bag. According to Hainline, who had been buying methamphetamine from Neff for several months, Neff at some point removed a small handgun from his coat pocket or waistband and placed it within arm's reach on the foot of the bed near his coat and the small black bag. Hainline had seen Neff carrying the same black, 9-millimeter handgun during drug deals in the previous two months. Matic also saw the handgun at the foot of the bed but never saw the weapon in Neff's hands.

Sometime later, officers arrived at the house in response to Secrest's call. When one of the officers entered the bedroom, Neff was sitting in a desk chair within arm's reach of the foot of the bed, and Matic was standing to one side of the bed. Hainline was doing laundry in another area of the house.

The officers brought everyone to the living room for a brief conversation, during which Matic admitted to having a marijuana pipe in the bedroom that Hainline had purchased for her. Once Matic retrieved the marijuana pipe from the bedroom, the officers arrested her and Hainline—but not Neff—for possessing drug

2

paraphernalia. Before taking Hainline and Matic to the county jail, however, the officers allowed Matic to change clothes in the bedroom with the door shut. The officers apparently did so because they had not "see[n] any weapons inside the room." R. vol. 3, 581. While alone in the bedroom, Matic moved the small black bag into the closet and pulled Neff's coat over the handgun to cover it up.

Later that day, the officers returned to the house at Secrest's request after she and her daughter, Amanda Chiles, discovered the items Matic had hidden in the bedroom, including the small black bag in the closet and the gun under Neff's coat on the bed. Lying next to the coat, Chiles also discovered the pipe Neff and Hainline had used to smoke methamphetamine, a wallet chain, and a pair of gloves that did not belong to Hainline or Matic. When the officers searched the small black bag, they found 73.8 grams of methamphetamine and a handwritten piece of paper that appeared to be a drug ledger (among other things).

These seized items triggered an investigation that led to Neff's arrest at his residence in February 2019. During the arrest, a federal agent searched Neff and found 18 grams of methamphetamine, $6,327 in cash, and a wallet chain resembling the one found in the bedroom at Secrest's house. A later search of Neff's residence uncovered a 9-millimeter bullet and a holster that fit the 9-millimeter handgun recovered from Secrest's house.

As relevant here, the government indicted Neff on three offenses related to the drugs and the handgun found in Secrest's house in November 2018: (1) possession with intent to distribute methamphetamine within 1,000 feet of a school under 21

U.S.C. §§ 841(a)(1), (b)(1)(A), and 860(a); (2) possession of a firearm in furtherance of a drug-trafficking crime under 18 U.S.C. § 924(c)(1)(A); and (3) possession of a firearm by a prohibited person under 18 U.S.C. §§ 922(g)(1), 924(a)(2). At trial, Hainline and Matic testified against Neff in exchange for favorable plea deals that potentially limited their sentences.

A jury convicted Neff of all three offenses, and the district court imposed a 216-month prison term followed by ten years of supervised release.[1] This appeal followed.

## Analysis

On appeal, Neff raises a single issue about one of the jury instructions for his two firearm-possession offenses. Because Neff did not object to the challenged instruction below, we review this issue for plain error. *United States v. Xiong*, 1 F.4th 848, 850 (10th Cir. 2021). Under the first two prongs of that standard, Neff must show that the district court made a "plain or obvious" error that prejudiced him at trial. *Id.* If he makes that showing, we proceed to the third prong and may set aside his convictions only if, "considering the record as a whole," the error "affected his substantial rights, meaning a reasonable probability exists that, but for [the flawed instruction]," the jury would not have convicted him. *Id.* at 853. Neff must also show, under the fourth prong of plain error, that the district court's erroneous instruction

---

[1] The jury also found Neff guilty of a fourth offense stemming from the drugs and cash seized during his February 2019 arrest. That offense is not at issue in this appeal.

"seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

Neff's argument involves the district court's instruction for the possession element of his firearm offenses. Consistent with our precedents, that instruction explained that the jury could not convict Neff of those offenses unless he either actually or constructively possessed the handgun found in Secrest's home. *See id.* at 852. Crucially, however, the instruction also said that constructive possession requires only proof that Neff "knowingly ha[d] the power . . . to exercise dominion or control over" over the weapon. R. vol. 1, 198. Neff argues that this instruction misstated the law because, as we made clear more than three years before his 2019 trial, constructive possession requires not only the "power to control an object," but also the "intent to exercise that control." *United States v. Little*, 829 F.3d 1177, 1182 (10th Cir. 2016). The government wisely concedes that the district court made an obvious mistake in omitting the intent requirement from the constructive-possession instruction. *See United States v. Benford*, 875 F.3d 1007, 1017 (10th Cir. 2017) (explaining that *Little* clarified "constructive possession also requires *intent* to exercise control" and that "omission of the intent element is [plain] error").

As a result of the government's plain-error concession, the key question concerns the third prong of the plain-error analysis—whether this instructional error affected Neff's substantial rights. Specifically, we must decide whether there is a reasonable probability that but for the error, the jury would not have convicted him. *See Xiong*, 1 F.4th at 853. The government says the error did not affect Neff's

5

substantial rights because the jury likely based the verdict on convincing evidence that Neff actually possessed the handgun. *See United States v. Sorensen*, 801 F.3d 1217, 1239 (10th Cir. 2015) (assessing likelihood that trial outcome would have changed without erroneous instruction based on "the strength of the government's case"). Neff counters that the jury more likely relied on the erroneous constructive-possession instruction because the government's actual-possession theory hinged on Hainline's unreliable testimony. As explained below, the government has the better argument.

The government presented evidence at trial to support a conviction based on actual possession. As the district court properly instructed the jury, actual possession requires "direct physical control over an object or thing." R. vol. 1, 198. And the government offered direct evidence that Neff exercised such control over the handgun found at Secrest's house: Hainline testified that he saw Neff remove the handgun from "his coat pocket or waistband" and place it on the bed. R. vol. 3, 382. That testimony (if credited) establishes that Neff handled the weapon for at least "a mere second or two," which is all that actual possession requires. *Xiong*, 1 F.4th at 853 (quoting *United States v. Samora*, 954 F.3d 1286, 1290 (10th Cir. 2020)). So if the jury accepted Hainline's testimony, it could have found Neff guilty of the challenged offenses based on actual possession.

And viewing the entire record, we are confident that the jury *did* credit Hainline's actual-possession testimony. In arguing otherwise, Neff asserts that the jury had "significant reasons to doubt" Hainline's testimony, including the fact that

6

he avoided a harsher sentence by pinning the handgun found on his bed on Neff and that no other evidence backed up his account. Aplt. Br. 10. But the lack of evidence corroborating Hainline's testimony does not necessarily reduce the odds that the jury rested its verdict on actual possession, because our precedents make clear that "a conviction may stand on the uncorroborated testimony of an accomplice." *Xiong*, 1 F.4th at 853. And the verdict on the drug-distribution offense suggests that the jury likely based its guilty verdict on Hainline's testimony alone, having found all the reasons to reject Hainline's testimony unpersuasive. Indeed, as the government notes, Neff's theory at trial on this count was that Hainline and Matic—not Neff— possessed and distributed the drugs in the small black bag found in the bedroom closet. And Hainline supplied key testimony refuting that theory. That the jury returned a guilty verdict on the drug-distribution offense signals that, despite the potential reasons to doubt Hainline, the jury "in all likelihood" found him generally credible and accepted his testimony. *Id.* at 854.

Neff resists this conclusion, positing that to support the drug-distribution charge the jury may have instead credited testimony from Matic or Michael Watkins, Neff's former roommate. We disagree. For one thing, the jury could not have based its verdict for the November 2018 drug-distribution offense on Watkins's testimony, because he only discussed the February 2019 events that led to a separate drug charge. And for another, it is implausible that the jury would credit Matic, but not Hainline, given that all the potential problems with his testimony—such as his drug use and his incentive to avoid a harsher sentence by pinning the drugs on Neff—

apply equally to her testimony. More likely, we think, is that the jury found both Matic and Hainline credible, as Neff's counsel in closing arguments emphasized was *required* to convict on the drug-distribution offense.[2]

We are particularly confident that the jury credited Hainline's testimony on the firearm-possession offenses because both parties emphasized actual possession in closing arguments. *See United States v. Simpson*, 845 F.3d 1039, 1061 (10th Cir. 2017) (explaining that "the prosecution's theory at closing argument bears on whether an erroneous jury instruction was prejudicial"). The government, for its part, repeatedly framed the case as being about Neff "bring[ing] the gun" with him to the house to protect his drugs, not about his ability to constructively possess the gun by exercising control over it. R. vol. 3, 665. And to support that framing, the government called the jury's attention to Hainline's testimony that "when [Neff] came in, he either pulled [the gun] out of his waistband or . . . his coat." *Id.* at 666–67; *see also id.* at 667 (urging jury to "[t]ake a look at that" testimony). So did Neff's counsel, who argued that the government's case on possession depended on Hainline's statement that Neff "took the gun out and . . . put it on the bed."[3] *Id.* at

---

[2] For example, Neff's counsel argued that a conviction on the drug offense required the jury to find that Hainline and Matic did not possess the drugs, meaning it "ha[d] to believe everything" Hainline and Matic testified to. R. vol. 3, 678. Similarly, when later highlighting the shared credibility problems with Hainline and Matic's testimony, Neff's counsel argued that the jury "ha[d] to accept everything they say . . . to find [Neff] guilty of anything." *Id.* at 684.

[3] Neff's counsel also attributed that statement to Matic. But as Neff notes on appeal, Matic only saw the gun at the foot of the bed (near where Neff was seated) and "never s[aw] it in his hands." R. vol. 3, 516.

679. What's more, Neff's counsel argued that to "pin" the gun on Neff, the jury "ha[d] to believe everything" Hainline and Matic said "because it's all based on" their testimony. *Id.* at 676. The parties' joint focus on Hainline's testimony and actual possession during closing arguments provides further assurance that the verdict would have been the same even if the jury had received the correct definition of constructive possession.[4] *See Xiong*, 1 F.4th at 853 (finding no reasonable probability of different verdict without erroneous constructive-possession instruction in part because government's "principal argument" at closing was that defendant actually possessed guns at issue).

Based on Hainline's testimony that Neff handled the gun and the parties' focus on actual possession in closing arguments, Neff fails to show a reasonable probability that the jury would have reached a different verdict but for the district court's erroneous constructive-possession instruction. *See id.* at 856. As a result, this error did not affect Neff's substantial rights and does not require us to set aside his convictions.[5] *See id.* at 853.

---

[4] We reject Neff's assertion that the jury likely did not accept the government's actual-possession theory for the firearm-possession offenses at closing because that theory was "more attenuated," Rep. Br. 2, than the one for the February 2019 drug offense, which emphasized that Neff was "caught red-handed" with the drugs, R. vol. 3, 659. The only support Neff offers is that the former theory required believing Hainline's testimony, yet we explained above why the jury likely did so.

[5] Given this conclusion, we need not consider (1) the government's alternative argument that Neff cannot show prejudice because "[t]he jury heard strong evidence establishing [that] he had the requisite intent" to establish constructive possession, Aplee. Br. 16; or (2) the final prong of plain error, whether the "error seriously affects the fairness, integrity, or public reputation of judicial proceedings," *Xiong*, 1 F.4th at 856.

**Conclusion**

Although the district court plainly erred by omitting the intent requirement from the constructive-possession instruction, Neff has not shown that this error affected his substantial rights. We therefore affirm his convictions.

Entered for the Court


Nancy L. Moritz
Circuit Judge