FILED
**United States Court of Appeals
Tenth Circuit**

**April 15, 2025**

**Christopher M. Wolpert
Clerk of Court**

<u>**PUBLISH**</u>

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRANDON KEITH THOMPSON,

    Defendant - Appellant.

No. 24-4006

_____

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:21-CR-00316-DBB-1)**

_____

Jessica Stengel, Assistant Federal Public Defender (and Scott Keith Wilson, Federal Public Defender, with her on the briefs), Salt Lake City, Utah, for Defendant - Appellant.

Tyler Murray, Assistant United States Attorney (and Trina A. Higgins, United States Attorney, with him on the brief), Salt Lake City, Utah, for Plaintiff - Appellee.

_____

Before **HARTZ**, **KELLY**, and **ROSSMAN**, Circuit Judges.

_____

**KELLY**, Circuit Judge.

_____

Defendant-Appellant, Brandon K. Thompson, was convicted of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and was sentenced to 110 months' imprisonment and three years' supervised release. I R. 519–20. On appeal, he argues that (1) the district court's jury instruction on actual possession incorrectly stated the law,

(2) the jury was not instructed on his theory of the case, (3) the evidence was insufficient to demonstrate knowing possession, and (4) 18 U.S.C. § 922(g)(1) is an unconstitutional exercise of Congress's power under the Commerce Clause. Aplt. Br. at 1–2. Exercising our jurisdiction under 28 U.S.C. § 1291, we affirm.

## Background

On July 8, 2021, employees at an AT&T store in Sandy, Utah, saw Mr. Thompson "messing" with an area where Apple watches were on display. III R. 395–99. After confronting Mr. Thompson about a missing watch, one of the employees activated a security alarm which alerted the police. Id. at 401–02. Sandy Police Officers Nystrom and Johnson responded to the alert. Id. at 418–19, 495–96. Officer Johnson went inside the store and asked Mr. Thompson for permission to pat him down. Id. at 498. Mr. Thompson initially agreed, but then changed his mind and ran out of the store. Id. at 498–99. Officer Johnson radioed that Mr. Thompson was fleeing, and Officer Nystrom turned on her body camera as both officers ran after Mr. Thompson. Id. at 421–22, 499.

The officers attempted to tackle Mr. Thompson, who tripped and fell into a parked car during the struggle. II Supp. R. Ex. 1a. Officer Johnson attempted to handcuff Mr. Thompson and got on top of him. Id. Mr. Thompson then grabbed onto Officer Johnson's holster and firearm with both of his hands and began to pull. Id.; see also I Supp. R. Ex. 2–3.

At this time, Eusebio Santos, a retired New York Police Department officer, saw the officers attempting to subdue Mr. Thompson. III R. 346, 355. Mr. Santos got out of

his truck to help.  Id. at 357.  According to Mr. Santos, Mr. Thompson had "completely gripped" the firearm, had pulled it partially out of the holster, and had his finger on the trigger.  Id. at 360–62.

As Mr. Santos approached, Mr. Thompson pulled the trigger causing a round to fire into the ground.  Id. at 424; II Supp. R. Ex. 1a.  Officer Nystrom radioed that shots were fired.  III R. 425–26.  After the shot, a melee followed with Mr. Santos and the officers attempting to get Mr. Thompson's hands off of the firearm.  Id. at 503, 506–07; II Supp. R. Ex. 1a.  The struggle ended when Officer Johnson tased Mr. Thompson, and the officers then detained him.  III R. 506–09.

At trial, the government introduced testimony from Mr. Santos, Officer Nystrom, and Officer Johnson, as well as video evidence of the altercation between Mr. Thompson and the officers, which was recorded on Officer Nystrom's body camera.  Id. at 346, 408, 475; II Supp. R. Ex. 1a.  Officer Johnson testified that his holster had a lever which needed to be switched to remove the firearm from the holster.  III R. 565.  This made the firearm's trigger inaccessible and invisible while it was in the holster.  Id. at 414–15, 504.  Additionally, the firearm had a safety mechanism that was located within the trigger itself.  Id. at 477, 485–86.  The trigger had two stages (the safety trigger and the actual trigger) which both had to be pressed fully in order to shoot the firearm.  Id. at 485–86.

3

**Discussion**

I.    **The district court did not abuse its discretion by declining to instruct the jury that actual possession must be exclusive.**

Before trial, the parties stipulated that Mr. Thompson was a felon at the time of the incident, knew that he had his hands on Officer Johnson's firearm, knew how a firearm operated, and intended to possess the firearm. I R. 360. Thus, the trial focused on whether Mr. Thompson had actual possession of the firearm. Mr. Thompson's proposed jury instructions defined actual possession in terms of "control or dominion," and his trial counsel clarified that "the idea of dominion is the power to exclude others[.]" Id. at 164–66; III R. 637, 641–42. The district court declined to give this instruction because it found that Tenth Circuit precedent never indicated that language regarding "dominion" or "exclusive control" should be imported from constructive possession into actual possession. III R. 643–44. The district court's instruction regarding actual possession provided in pertinent part:

> A person who knowingly has direct physical control over a thing at a given time is then in actual possession of it. The amount of time a person knowingly has direct physical control over a thing need not be lengthy, a second or two can be sufficient.

Id. at 672.

On appeal, Mr. Thompson argues that the district court abused its discretion by improperly instructing the jury on actual possession. Aplt. Br. at 17. More specifically, he argues that the district court omitted the "critical" requirement that actual possession must be exclusive. Id. We review a properly preserved claim of error in jury instructions

4

for an abuse of discretion.[1]  United States v. Benvie, 18 F.4th 665, 669 (10th Cir. 2021).

In the jury instruction context, "[a] district court abuses its discretion when its decision is

arbitrary, capricious or whimsical or falls outside the bounds of permissible choice in the

circumstances."  United States v. Olea-Monarez, 908 F.3d 636, 639 (10th Cir. 2018)

(quotations omitted).  We review the jury instructions as a whole de novo "to determine

whether they properly state the law and issues in a particular case."  Benvie, 18 F.4th at

669.

The Supreme Court has recognized that "possession" can be either "actual" or

"constructive."  Henderson v. United States, 575 U.S. 622, 626 (2015).  "Actual

possession exists when a person has direct physical control over a thing."  Id. (emphasis

added).  Comparatively, "[c]onstructive possession is established when a person, though

lacking such physical custody, still has the power and intent to exercise control over the

object."  Id.  The concept of "exclusive" control over an object may arise in the

constructive possession context.  See United States v. Johnson, 46 F.4th 1183, 1187 (10th

Cir. 2022).  For example, "[w]hen a defendant has exclusive control over the property

where contraband is found, a jury can reasonably infer the defendant constructively

---

[1] We reject the government's argument that Mr. Thompson's challenge to this instruction should be reviewed for plain error.  See Aplee. Br. at 23–24.  To preserve a claim of error in jury instructions, a party "must inform the court of the specific objection and the grounds for the objection[.]"  Fed. R. Crim. P. 30(d).  Here, Mr. Thompson's counsel argued at both the pretrial conference and the final jury instruction conference that the jury should be instructed that actual possession requires the power to exclude others.  See III R. 150, 637, 641–42.  Though counsel used both "dominion and control" and "the power to exclude others" interchangeably, these phrases raised the same argument, which the district court understood and ruled on fully.  See id. at 637–48.

possessed the contraband." Id. (emphasis added); see also United States v. Samora, 954 F.3d 1286, 1290 (10th Cir. 2020) ("Knowledge, dominion, and control can be inferred when a defendant has exclusive control over the premises in which the firearm was found.").

Mr. Thompson now argues that actual possession — not constructive possession — requires exclusive control. Aplt. Br. at 17–18. Mr. Thompson relies on United States v. Johnson, where this court found evidence of actual possession where a defendant sat on a firearm because doing so "conceal[ed] it from the sight of others" and "require[d] anyone who would try to make contact with or control the item to physically move the person sitting on it." 46 F.4th at 1188–89. From this, Mr. Thompson argues that actual possession over a firearm requires knowing, exclusive dominion. Aplt. Br. at 27–28. He also relies on "car crime" cases, decisions of our sibling circuits, pattern jury instructions,[2] law review articles, and dictionary definitions. Id. at 21–26.

But none of these sources speak to whether Tenth Circuit law requires an instruction that actual possession must be exclusive. Johnson involved a faulty constructive possession instruction that omitted the element of intent. 46 F.4th at 1186. Mr. Johnson argued that reversal of his firearm convictions was required because the constructive possession instruction was faulty and the evidence of actual possession was weak or insufficient, so the court could not rely upon it. 46 F.4th at 1186–89 ("At its

---

[2] The district court correctly noted that the Tenth Circuit's pattern jury instruction titled "Actual or Constructive Possession" would not be useful because it deals almost entirely with constructive possession and never defines actual possession. See I R. 407; Tenth Cir. Crim. Pattern Jury Inst. No. 1.31.

core, [Mr. Johnson's] argument is that the evidence he had been sitting on the gun . . . is not enough to demonstrate actual possession. We disagree."). Johnson suggests that a defendant's exclusive possession of a firearm may be a factor to consider when assessing the sufficiency of the evidence for actual possession. Id. But Johnson in no way suggests that we should graft language regarding exclusivity from the constructive possession context onto the requirements for actual possession. Indeed, Mr. Thompson's trial counsel acknowledged that this court has not incorporated the concept of exclusivity into its law on actual possession. See I R. 402–03; see also Oral Arg. at 1:25–2:50 (appellate counsel acknowledging the same).

Given the absence of support for Mr. Thompson's position, we can hardly say that the district court abused its discretion in refusing his requested instruction. Critically, the language of the instruction accurately stated the law and closely tracked the Supreme Court and Tenth Circuit definitions of actual possession. See III R. 672; Henderson, 575 U.S. at 626 ("Actual possession exists when a person has direct physical control over a thing."); Johnson, 46 F.4th at 1188 (explaining that "a mere second or two" of control can be sufficient for actual possession of a firearm). The district court's decision to focus the jury on whether Mr. Thompson achieved direct physical control of the firearm — the "sine qua non" of actual possession — was appropriate. III R. 647.

**II.    The district court did not abuse its discretion by refusing to give Mr. Thompson's requested instruction on his theory of the case.**

Mr. Thompson next argues that the district court abused its discretion by refusing to instruct the jury on his theory of the case. Aplt. Br. at 32. Mr. Thompson challenges

7

the district court's refusal to give two of his requested instructions: (1) an instruction regarding momentary possession, and (2) an instruction regarding attempted possession. Id. at 35–36; I R. 219.  We review a district court's refusal to give a requested instruction on the defendant's theory of the case for an abuse of discretion.  United States v. Britt, 79 F.4th 1280, 1286 (10th Cir. 2023).  "A criminal defendant is entitled to an instruction on his theory of defense provided that theory is supported by some evidence and the law." United States v. Beckstrom, 647 F.3d 1012, 1016 (10th Cir. 2011) (quotations omitted). However, a district court does not err in refusing to give a requested instruction on the defendant's theory of the case if that theory is adequately conveyed by other instructions. See United States v. Martin, 528 F.3d 746, 753 (10th Cir. 2008).

The first proposed instruction would have instructed that "a person is not in possession of an object simply because the person momentarily touches or tries to touch it." Aplt. Br. at 35; I R. 219.  The second would have instructed that the jury must find Mr. Thompson not guilty if it concluded that he "attempted or tried to possess the firearm, but never had control or dominion over it." Aplt. Br. at 35–36; I R. 219.  Both instructions related to Mr. Thompson's theory that although he attempted to possess the firearm, he merely touched it and never had control over it.  III R. 697, 701.

Even though the district court did not adopt Mr. Thompson's requested instructions, it still adequately conveyed his theory of the case.  The district court addressed the degree of control necessary for actual possession by instructing that "[t]he amount of time a person knowingly has direct physical control over a thing need not be lengthy, a second or two can be sufficient." Id. at 672.  This language is more in line with

8

this court's precedent than Mr. Thompson's proposed language, and properly instructed the jury on the necessary degree of control. See Johnson, 46 F.4th at 1187–89. The court also instructed that the jury must find Mr. Thompson not guilty if it found that he merely attempted to control the firearm. By instructing that Mr. Thompson needed to have "direct physical control over [the firearm] at a given time" the district court clearly explained that Mr. Thompson had to succeed in controlling the firearm to be guilty. III R. 672. Although the instruction never used the word "attempt," the district court was not required to use the exact language that Mr. Thompson requested. United States v. Dozal, 173 F.3d 787, 797 (10th Cir. 1999). Thus, the instructions adequately conveyed Mr. Thompson's theory of the case to the jury.

### III. The evidence was sufficient to show that Mr. Thompson had actual possession of the firearm.

Mr. Thompson next argues that the evidence was insufficient to show that he knowingly controlled the firearm. Aplt. Br. at 37, 39. We review challenges to the sufficiency of the evidence de novo, "viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government." United States v. Dewberry, 790 F.3d 1022, 1028 (10th Cir. 2015) (quotations omitted). "We will reverse only if no rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." Id. (quotations omitted). Because we owe "considerable deference to the jury's verdict," we neither weigh conflicting evidence nor consider the credibility of witnesses. Id.

The government needed to prove that "(1) [Mr. Thompson] had previously been convicted of a felony; (2) he thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate commerce." Samora, 954 F.3d at 1290. On appeal, Mr. Thompson challenges only the sufficiency of the evidence as to second element — that he knowingly possessed a firearm. Aplt. Br. at 39.

The government claims that this challenge is resolved squarely by our decision in United States v. Coleman, 9 F.3d 1480 (10th Cir. 1993). Aplee. Br. at 19–21. In Coleman, this court held that the defendant "used" a firearm in a crime of violence for the purposes of 18 U.S.C. § 924(c) when he went to rob a bank unarmed but later struggled with a security guard to get the guard's firearm. 9 F.3d at 1482–84. This court rejected the defendant's argument that struggling with the security guard never gave him "enough control or possession of the weapon to 'use' it." Id. But Coleman was decided in the context of the "use" of a weapon under § 924(c), which "does not require that the assailant have a precise, measurable amount of physical dominion or control over a weapon." Id. at 1484. This context differs from the standard in this case, which required the government to prove that Mr. Thompson had "direct physical control" over the firearm. Henderson, 575 U.S. at 626.

Though Coleman does not control our analysis, ample evidence supports the jury's conclusion that Mr. Thompson had direct physical control of the firearm. First, video evidence clearly showed that Mr. Thompson had both of his hands on the gun and was aggressively pulling on it for much longer than a few seconds before the firearm discharged. II Supp. R. Ex. 1a; I Supp. R. Ex. 2–3. The video evidence was bolstered by

10

testimony from Mr. Santos and the officers that Mr. Thompson had his hands on the gun, and as Mr. Thompson himself acknowledges, supports the reasonable inference that he was the one who pulled the trigger.  III R. 359–62, 470, 546; Aplt. Br. at 41.  The government also introduced evidence that the firearm's holster had a securing mechanism that would conceal the trigger unless the firearm was pulled out of the holster.  III R. 565.  Additionally, the firearm's trigger safety mechanism had two stages which both needed to be pressed fully in order to shoot the firearm.  Id. at 485–86.  Thus, "[v]iewing all the evidence collectively and in the light most favorable to the Government, a reasonable jury could conclude that [Mr. Thompson] had direct physical control over the firearm."  United States v. Morales, 758 F.3d 1232, 1236 (10th Cir. 2014) (quotations omitted).

Mr. Thompson's arguments about his mental state are misplaced.  Mr. Thompson makes much of the fact that, despite the government's burden to prove that he knowingly possessed the firearm, the government did not offer evidence of his mental state.  See Aplt. Br. at 39; Aplt. Supp. Auth.  This argument ignores the fact that the parties stipulated that Mr. Thompson knew that he had his hands on a firearm, knew how a firearm operated, and intended to possess the firearm.  I R. 360; III R. 331–32.  These stipulations, combined with the strong evidence of Mr. Thompson's control over the firearm, were sufficient to sustain a conviction.

## IV.    18 U.S.C. § 922(g)(1) is constitutional under the Commerce Clause.

Finally, Mr. Thompson argues that 18 U.S.C. § 922(g)(1) is an unconstitutional exercise of Congress's Commerce Clause powers.  Aplt. Br. at 44.  Mr. Thompson correctly acknowledges that this argument is foreclosed by precedent from both the

11

Supreme Court and this circuit, and he raises it for preservation purposes only.  Id.; see also Scarborough v. United States, 431 U.S. 563 (1977); United States v. Urbano, 563 F.3d 1150, 1153–55 (10th Cir. 2009).  Accordingly, the district court's judgment is

AFFIRMED.