<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

———————————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LARRY D. JOHNSON,

    Defendant - Appellant.

No. 21-3113

———————————————————

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:17-CR-20034-DDC-JPO-1)**

———————————————————

Candace Caruthers, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with her on the briefs), Office of the Federal Public Defender, Denver, Colorado, for Defendant-Appellant.

Michelle McFarlane, Special Assistant United States Attorney (Duston J. Slinkard, United States Attorney, and James A. Brown, Appellate Chief, with her on the brief), Office of the United States Attorney, District of Kansas, Kansas City, Kansas, for Plaintiff-Appellee.

———————————————————

Before **TYMKOVICH**, Chief Judge, **BRISCOE** and **MATHESON**, Circuit Judges.

———————————————————

**TYMKOVICH**, Chief Judge.

———————————————————

    Larry D. Johnson was convicted by a jury for possessing a firearm and possessing crack cocaine with the intent to distribute.  He seeks to overturn his

two firearms convictions because he claims the jury received an erroneous instruction on constructive possession.

Reviewing for plain error, we affirm. Had the jury been given the proper instruction, we find it would have nevertheless been compelled to conclude Johnson had both actual and constructive possession of the firearm. After officers pulled him over for driving the wrong way on a one-way street, they saw a black pistol laying on the driver's seat where he had been sitting. Because Johnson had been exerting physical control over the firearm by sitting on it, we find he actually possessed it. And we also conclude he was in constructive possession of the firearm based on physical contact; the fact the firearm was loaded; his previous statement admitting to possessing a firearm to aid in drug trafficking; and his simultaneous possession of drugs for distribution.

## I.  Background

### A. The Arrest and Charges

Johnson was arrested during a traffic stop after officers discovered drugs and a firearm. They found a pistol laying on the driver's seat, and on his person they found $411 in cash and a large plastic bag containing 28 smaller bags with cocaine base (crack).

After his arrest, Johnson was charged with (1) possessing cocaine base with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); (2) possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and (3) possession of a firearm by a convicted felon, in

violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  A jury convicted him as charged.

### B.  Testimony at Trial

To better understand the jury's verdict on firearms possession, it is useful to briefly review the testimony at trial.

At trial only the government proffered a number of fact witnesses.  The jury heard from the officers who stopped and arrested Johnson, Johnson's girlfriend and owner of the Chevy Impala he was driving, the ATF special agent who testified about the significance of the evidence collected during the stop, a Kansas Bureau of Investigation DNA Analyst who performed DNA testing on the firearm, and a detective who testified about a previous statement Johnson had made about possessing firearms and selling drugs during an earlier case.

The arresting officers testified they stopped Johnson as he drove an Impala because he was driving the wrong way down a one-way street.  As they approached him, the officers noticed that Johnson—the sole occupant—had a beer bottle in his hand.  When an officer opened the driver's door, Johnson handed him the partially empty but capped bottle.  They ordered Johnson to exit the car because he was being placed under arrest.  Johnson refused to exit despite being told multiple times.  But after one officer told him they would remove him forcefully, Johnson voluntarily got out of the car.

3

After Johnson exited the car, officers noticed a black pistol laying on the driver's seat where Johnson had just been sitting.  To one officer, it appeared Johnson had either been sitting on it or had a large part of his leg on it.

Johnson's girlfriend and the owner of the Impala also testified.  Although she initially denied knowing Johnson and was generally evasive and vague with the officer, by the time she testified she conceded she had a relationship with Johnson and that she had allowed him to drive her car that evening.  But she denied knowledge or ownership of the firearm, the $411 in cash, and the drugs.

An expert witness on drug-trafficking and firearms testified that Johnson likely possessed the cocaine base for distribution and the firearm to aid him in his drug dealing.  She testified that the cocaine base and its packaging indicated Johnson possessed it for sale; it is common for drug dealers to possess firearms to protect themselves and the drugs they are selling.  Nonetheless, she testified that she found no testable fingerprints on the firearm.

Another government witness performed a DNA analysis on the firearm. The firearm had a mixture of DNA from four people, she said, and it could be separated into a partial major DNA profile and a partial mixed minor DNA profile.  The partial major DNA profile was consistent with its source as an unknown female contributor, and the partial minor DNA profile was too low quality for analysis.

Finally, the government introduced into evidence an audio recording of a statement Johnson made in 2004 where he admitted to having a gun in connection

4

with drug distribution in a previous case. The government presented the audio recording as Rule 404(b) evidence to demonstrate Johnson's intent or lack of mistake in possessing the firearm. Fed. R. Evid. 404(b).

### C. Jury Instructions

The two firearm charges required the government to prove Johnson had actual or constructive possession of the firearm. 18 U.S.C. §§ 922(g)(1), 924(c)(1)(A), 924(a)(2). The district court provided the following jury instructions for actual and constructive possession:

> [Actual Possession]: A person who knowingly has direct physical control over an object or thing, at a given time, is then in actual possession of it.
>
> [Constructive Possession]: A person who, although not in actual possession, knowingly has the power at a given time to exercise dominion or control over an object, either directly or through another person or persons, is then in constructive possession of it.

ROA, Vol. 1 at 428; ROA, Vol. 3 at 607–08.

## II. Discussion

Johnson challenges the firearm convictions, contending the district court provided the jury an erroneous instruction on constructive possession. Because he failed to object at trial, we review for plain error. *United States v. Trujillo-Terrazas*, 405 F.3d 814, 817 (10th Cir. 2005).

### A. Plain Error

"Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness,

integrity, or public reputation of judicial proceedings." *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1222 (10th Cir. 2008) (internal quotation marks omitted).

The government concedes the first two elements—that there was error that was plain. We agree because constructive possession has an element of intent, and the instruction given by the district court omitted that element. *See United States v. Little*, 829 F.3d 1177, 1182 (10th Cir. 2016) ("[C]onstructive possession exists when a person not in actual possession knowingly has the power *and intent* at a given time to exercise dominion or control over an object." (emphasis added)); *United States v. Xiong*, 1 F.4th 848, 853 (10th Cir. 2021) (noting this same error was plain).

Johnson bears the burden of demonstrating the last two elements of the plain-error test are met. *See United States v. Sorensen*, 801 F.3d 1217, 1238 (10th Cir. 2015). In determining whether Johnson's substantial rights were affected, "our precedent instructs that . . . we ask only whether there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Hasan*, 526 F.3d 653, 664–65 (10th Cir. 2008) (internal quotation marks omitted). In other words, we ask whether there is a reasonable probability that, but for the erroneous instruction the jury would have concluded Johnson was not in possession of the firearm. Because he fails to surmount the hurdle imposed by this third prong of the plain-error test we end our analysis there. *See United States v. Rosales-Miranda*,

6

755 F.3d 1253, 1258 (10th Cir. 2014) ("We will not reverse a conviction for plain error unless all four prongs of the plain-error test are satisfied." (internal quotation marks omitted)).

### B. *Actual and Constructive Possession*

At trial the jury was given two independent paths to find Johnson possessed the firearm:  actual or constructive possession.  "Actual possession exists when a person has direct physical control over a thing." *United States v. Benford*, 875 F.3d 1007, 1020 (10th Cir. 2017) (internal quotation marks omitted).  On the other hand, constructive possession exists when a person, "though lacking such physical custody, still has the power and intent to exercise control over the object." *Id.* (cleaned up).

When a defendant has exclusive control over the property where contraband is found, a jury can reasonably infer the defendant constructively possessed the contraband.  *Little*, 829 F.3d at 1183.  But where—as here—the defendant jointly occupies the premises (the car) on which the firearm is found, the government is required to show a nexus between the defendant and the firearm.  *Benford*, 875 F.3d at 1015.  That is, the government must demonstrate the defendant knew of, had access to, and intended to exercise dominion or control over the contraband.  *Id.* at 1020.  "[P]ossession of a weapon[] may be proved by circumstantial as well as direct evidence." *United States v. Morales*, 758 F.3d 1232, 1235 (10th Cir. 2014) (internal quotation marks omitted).

When the evidence of actual possession before a jury is sufficiently strong, we will not reverse a conviction merely because the jury was given an erroneous instruction on constructive possession. *Cf. United States v. Samora*, 954 F.3d 1286, 1295 (10th Cir 2020) ("Because the Government's evidence demonstrating actual possession is weak, the fact that the jury was properly instructed as to actual possession is of no moment."). For example, in *United States v. Simpson*, 845 F.3d 1039, 1061 (10th Cir. 2017), we concluded an appellant convicted for unlawfully possessing a shotgun and ammunition could not show a reasonable likelihood of a different outcome but for an erroneous instruction on constructive possession because the evidence of actual possession was so strong. We begin by reviewing the evidence for actual possession and then constructive possession.

### 1. *Actual Possession*

Johnson contends the evidence of actual possession was insufficiently compelling, so there was a reasonable probability that the jury relied on a theory of constructive possession to convict him. At its core, his argument is that the evidence he had been sitting on the gun or had a large portion of his leg on top of it is not enough to demonstrate actual possession. We disagree.

As our cases explain, a person has actual possession of an item if he has direct physical control over it at a given time. *Samora*, 954 F.3d at 1290. To start, Johnson unquestionably knew of the firearm he had been sitting on, as

8

evidenced by the jury's findings.[1]  And knowingly sitting on an item necessarily indicates physical control over it.  By placing his body over and on the firearm, Johnson made physical contact with it, exerting force on it and arguably preventing any other person from gaining control over it.[2] *See Actual Physical Control*, *Black's Law Dictionary* (11th ed. 2019) ("Direct bodily power over something, esp. a vehicle.").[3]

Johnson contends the presented evidence is weak, and a jury would not be compelled to find he actually possessed the firearm.  Citing *Samora*, 954 F.3d

---

[1]  In convicting Johnson of the firearm charges, the jury was given two paths for possession:  actual or constructive possession.  The proper actual possession instructions and faulty constructive possession instructions presented to the jury both required Johnson's knowledge of the firearm, meaning that it must have believed he knew he was sitting on the pistol to convict him.  And Johnson's challenge to the constructive possession instructions is limited to the omission of the intent element; he makes no challenge to the jury's knowledge finding.

[2]  In a similar case, the Sixth Circuit concluded a driver had actual possession of a gun "less than inches away from" him, lodged between the driver's seat and the center console.  *United States v. Morrison*, 594 F.3d 543, 544–45 (6th Cir. 2010).  Testing for sufficiency of the evidence and viewing the facts in the light most favorable to the government, the court assumed the driver knew of the gun and that it was rubbing his side.  *Id.* at 545.  The court reasoned that arrangement—his knowledge of the gun and the fact it was rubbing his side—was functionally equivalent to carrying it in a holster.  *Id.*  Here, it is established Johnson knew of the firearm and that he was making physical contact with it while sitting in the car.  Sitting on a firearm is a greater exertion of control than sitting next to a firearm lodged between the driver's seat and the center console.

[3]  We recognize "actual physical control" is not the same as "direct physical control."  But this borrowed concept is helpful in understanding the metaphysical aspect of possession.

at 1290, he argues actual possession requires that he have actually held the firearm. In that case, we held that "to convict on actual possession, the defendant must have held the firearm 'for a mere second or two.'" *Id.* (citing *United States v. Adkins*, 196 F.3d 1112, 1115 (10th Cir. 1999), *overruled on other grounds by Chambers v. United States*, 555 U.S. 122 (2009)). But *Adkins*—the case cited by *Samora*—does not clearly stand for that proposition. It explains that holding "a firearm for a mere second or two" would be insufficient to establish possession if the "felon truly did not know that what he possessed was a firearm or there was some recognized legal justification for his holding the firearm." 196 F.3d at 1115. We understand it to say that holding a firearm for a mere second or two—along with the requisite intent, knowledge, and lack of justification—could be *sufficient* for actual possession. *See United States v. Williams*, 403 F.3d 1188, 1194 (10th Cir. 2005) (citing *Adkins* for that very proposition).

But we do not think *Adkins* implies that holding the gun for a second or two is *necessary* for actual possession. Indeed, we have noted that carrying a pistol in a pocket is "physical possession," which we interpret to mean actual possession. *United States v. Spence*, 721 F.3d 1224, 1226, 1229–30 (10th Cir. 2013) (noting a defendant physically possessed a gun when he had it in his right-front pocket); *Benford*, 875 F.3d at 1020 ("Actual possession exists when a person has direct physical control over a thing." (internal quotation marks omitted)). That could not be the case if a defendant were required to hold the gun for at least a second or two for actual possession. In most cases where a

10

defendant is found to have a gun in his pocket, in a holster, or otherwise on his person, it can probably be assumed he must have handled the gun for at least a second or two to place it there.  But suppose a defendant asks a co-conspirator to place a pistol the defendant has never held in his pocket or holster.  Can we really say that defendant is not in actual possession of the gun in his pocket or holster?  Is he not exerting a "direct physical control over" it simply because he never held it in his hands?  *See Benford*, 875 F.3d at 1020.  Because *Adkins* stands for the proposition that holding a gun for a mere second or two is sufficient for actual possession and we have noted that carrying a gun in a pocket is actual possession, we do not interpret our law as requiring the *holding* of a gun in every case.

Johnson also argues he did not have actual possession of the gun because merely touching a gun is insufficient to prove possession, relying on *United States v. Smith*, 997 F.3d 215, 221 (5th Cir. 2021) ("possession does not encompass mere touching").  In that case, the court concluded the defendant merely touched but did not possess a firearm when he admitted to touching it at a friend's house in an inspection.  Assuming without deciding mere touching is insufficient for actual possession, Johnson's argument fails because he did not merely touch the gun.  Instead, he made direct contact with the firearm by sitting on it for at least the duration of the traffic stop until he exited the vehicle.  Knowingly sitting on an item, unlike briefly touching it, is a far greater exertion of control.  Not only does it conceal it from the sight of others, but it also

11

requires anyone who would try to make contact with or control the item to physically move the person sitting on it.

Accordingly, we conclude the uncontroverted evidence of actual possession here is so strong that no reasonable jury would have acquitted Johnson had it received a proper instruction on constructive possession.

### 2. *Constructive Possession*

Even if the jury resolved the question of possession based on constructive possession, we find it would still have been compelled to conclude Johnson constructively possessed the firearm had it received the proper instruction. As noted previously, Johnson was aware of the firearm he was sitting on. *See United States v. Gutierrez*, 995 F.2d 169, 171 (9th Cir. 1993) ("It would tax credulity to assert that Gutierrez was sitting on top of a pistol without knowing of its presence"). The remaining question, then, is whether the jury would be compelled to conclude he *intended* to exercise dominion or control over it. *See Little*, 829 F.3d at 1182 ("[C]onstructive possession exists when a person not in actual possession knowingly has the power *and intent* at a given time to exercise dominion or control over an object." (emphasis added)); *Simpson,* 875 F.3d at 1020.

The evidence of Johnson's intent to exert control over the firearm is strong. First, as previously discussed, he was knowingly sitting on the gun during the

12

traffic stop.[4]  Second, the jury heard evidence about Johnson's reason for possessing the gun, and the jury's verdict on the second count (possession of a gun in relation to drug trafficking) indicates it believed the government's explanation for why Johnson would have possessed the firearm—to aid him in drug trafficking.  As one witness testified, Johnson's possession of the cocaine base was consistent with possession with intent to distribute because it was packaged in smaller bags and there was an absence of paraphernalia that indicated personal use.  Third, the government also presented Johnson's statement to an officer in a prior case from 2004 in which he admitted to having a gun in connection with drug distribution as evidence of his intent and lack of mistake.[5]

Johnson advanced a different theory about the firearm.  He argued the gun was likely his girlfriend's, or it belonged to some other person who borrowed her car.  After all, the major DNA profile found on the firearm was from a woman

---

[4] In one case, the New Mexico Supreme Court reviewed the sufficiency of the evidence for a conviction requiring the possession of a firearm. *State v. Garcia*, 2005-NMSC-017, 116 P.3d 72, 74.  The Court supported its conclusion that the defendant did constructively possess a firearm under a seat in the car by noting the defendant was sitting on a sizeable ammunition clip that matched the gun. *Id.* at 77–78.  If proximity to a firearm and sitting on a matching clip is sufficient for constructive possession, we think sitting on the gun itself is an even stronger indication of constructive possession. *Id.* at 78.

[5] Johnson contends the statement he made was unreliable (because he was coerced) and unhelpful to the jury (because it is stale).  But he has not argued the district court plainly erred in admitting the testimony.  To introduce the statement, the government presented testimony of the detective who questioned Johnson in 2004.  Although Johnson charged that his statement was coerced, none of the testimony presented to the jury came close to supporting that claim.

and the firearm was found in her car. But even if the gun belonged to his girlfriend or someone else, or if it had been possessed by someone else before, the dispute here is not the firearm's ownership or prior control. *See United States v. King*, 632 F.3d 646, 653 (10th Cir. 2011) ("Possession and ownership are distinct concepts and the statute at issue punishes possession, not ownership."). What matters is whether Johnson intended to exercise power over the firearm when he was sitting on it. And the indicia of intent to control the firearm far outweigh the possibility Johnson knowingly sat on the gun with no intent to exercise dominion over it.

Johnson's final argument is similarly unpersuasive. He contends the facts of his case are analogous to those in *Samora*, 954 F.3d at 1289–90, where this court reversed a conviction because there was a reasonable probability that, but for the same erroneous jury instruction, the defendant there would have been acquitted. In that case, the defendant was the sole occupant of a borrowed car, and the police found the firearm—which had his DNA—in the center console. *Id.* at 1290–92. There was no evidence that the defendant intended to distribute drugs or engage in another activity that might involve firearms. The court concluded that proximity and DNA evidence alone were insufficient to demonstrate the jury would have been compelled to reach the same outcome had it been properly instructed on constructive possession. *See id.* at 1293–95. But here the evidence of intent is significantly stronger—Johnson possessed drugs

with intent to distribute them, the firearm was loaded, and he admitted to previously possessing a firearm to aid in his drug dealing.

As the government argues, this case is much closer to *Xiong*, 1 F.4th at 850, where we affirmed a firearm conviction despite an erroneous jury instruction on constructive possession. In that case, the defendant and his co-conspirator—along with others—executed a drug deal that turned out to be a sting operation. *Id.* In preparation for the deal, the defendant grabbed two handguns from his Buick and handed them to the co-conspirator, at which time the co-conspirator saw a shotgun in the Buick. *Id.* at 850–51. During the drug deal, the defendant sat in the front-passenger seat of the Buick while being driven by a different co-conspirator. *Id.* at 851. When law enforcement moved in to arrest the participants, they saw two rifles between the front-passenger seat and the center console and one shotgun on the floorboard behind the driver's seat. *Id.* at 851–52.

At trial, the jury received the same erroneous instruction on constructive possession. *Id.* at 852–53. Nevertheless, the court found the jury would be compelled to conclude the defendant had constructive possession of the shotgun even if it received the proper instruction because: (1) the case involved a drug deal that unfolded over two days; (2) the co-conspirator observed the shotgun in the back seat of the Buick in the defendant's garage, when the defendant had exclusive control over the Buick and its contents; and (3) the shotgun was loaded and ready to fire on the backseat floorboard, where it was readily accessible only

to the defendant. *Id.* at 857–58. And here, Johnson possessed drugs for sale along with a loaded and readily accessible firearm. What is more, he was the sole occupant of the car, and the firearm was not merely readily accessible, he was sitting on it. Although there is no testimony Johnson previously had exclusive control over the Impala or the firearm, his actual contact with the loaded gun, possession of drugs for sale, and prior statement admitting to possessing a firearm to aid with drug sales would compel a properly instructed jury to find he constructively possessed the firearm. Therefore, the erroneous jury instruction did not affect Johnson's substantial rights.

In sum, the evidence firmly supports the conclusion that Johnson was in constructive possession of the firearm.

## III. Conclusion

For the foregoing reasons, we AFFIRM the district court.

No. 21-3113, *United States v. Johnson*
**BRISCOE**, Circuit Judge, concurring.

While I appreciate the majority's diligence in addressing both actual and constructive possession, I rest my concurrence on actual possession alone and conclude the additional analysis of constructive possession is unneeded to support affirmance of the convictions in question.

Under the third prong of the plain-error test, Johnson must show that the error affected his substantial rights. *United States v. Samora*, 954 F.3d 1286, 1293 (10th Cir. 2020); *United States v. Benford*, 875 F.3d 1007, 1017 (10th Cir. 2017). To demonstrate that the error affected his substantial rights, Johnson must "show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Samora*, 954 F.3d at 1293 (internal quotation marks omitted). A reasonable probability "is a probability sufficient to undermine confidence in the outcome." *United States v. Wolfname*, 835 F.3d 1214, 1222 (10th Cir. 2016) (quoting *United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014)). This inquiry "consider[s] the strength of the government's case." *United States v. Sorensen*, 801 F.3d 1217, 1239 (10th Cir. 2015). When the government presents "strong evidence" supporting conviction on an alternate theory for which there was no instructional error, a defendant generally cannot show prejudice to his substantial rights. *Id.*; *see also United States v. Folse*, 854 F. App'x 276, 285 (10th Cir. 2021) (unpublished) (finding defendant failed to carry his burden to show his substantial rights were affected by erroneous constructive possession

1

instruction in firearms prosecution where "evidence before the jury [that] indicated that [defendant] had actual possession" of the gun was "more than sufficient to satisfy the possession element of the felon-in-possession offense").

Johnson argues that (1) there is a reasonable probability that the jury *did not* rely on a theory of actual possession, and instead the jury used the erroneous instruction on constructive possession because the evidence of actual possession was not strong; and (2) there is a reasonable probability that the jury would have acquitted had it received a proper instruction on constructive possession, because the evidence of intent to exercise control of the gun was not strong.

I agree with the government that Johnson cannot show that the district court's error affected his substantial rights for purposes of the third prong of the plain-error test.

First, contrary to Johnson's assertion, the record shows that the government presented strong evidence supporting actual possession. For Counts 2 and 3, the district court correctly instructed the jury that it could find that Johnson possessed the gun either actually *or* constructively. ROA, Vol. III, at 607. Unlike the erroneous instruction on constructive possession, the instruction given to the jury on actual possession was correct and follows this court's precedent: "A person who knowingly has *direct physical control* over an object or a thing at a given time is then in actual possession of it." *Id.* (emphasis added); *see, e.g.*, *Samora*, 954 F.3d at 1290.

The government presented the following evidence of actual possession: (1) Officer Mitchell testified that he observed the gun on the driver's seat where Johnson had been

2

sitting just after Johnson exited the vehicle; (2) Officer Mitchell testified that the placement of the gun was such that Johnson was "basically sitting on top of the pistol or had a large part of his leg on it covering it from [Officer Mitchell's] view"; (3) the Officers did not see anyone else in the car at any point during the traffic stop; (4) Johnson initially refused to exit the vehicle; and (5) Johnson's girlfriend Ms. Pric testified that the gun was not hers, nor did she know how the gun got in her car. ROA, Vol. III, at 309–10, 410–14, 636–37. The government highlighted these points in closing argument, arguing that Johnson "did have *actual possession* when he was sitting in the car on this gun." *Id.* at 638 (emphasis added). Considered as a whole, this evidence showed that Johnson, who was the sole occupant of the vehicle, was in immediate physical contact with the gun while he was in the vehicle: He was sitting on top of the gun and touching it with his buttocks or legs, thereby keeping it secure and hidden from the Officers' view. Because Johnson exercised "direct physical control" over the gun by sitting on it and covering it with his body, he actually possessed it.

Johnson disregards the aforementioned evidence and instead contends that the jury could have rejected a theory of actual possession for the following reasons: (1) he "was seated in close proximity to the gun" but "the gun was not found on [his] person" and the DNA on the gun could not definitively be linked to him; (2) he "did not necessarily need to handle the gun to sit on it"; and (3) he did not own the car, and its owner, his girlfriend Ms. Pric, allowed many people to borrow it. Aplt. Br. at 13–17. Notably, Johnson has never controverted or disputed that he was sitting on the gun when the Officers

3

approached him; he only asserts, with no elaboration, that "the evidence that [he] was

seated on top of the gun or that it was under his leg differed meaningfully from having

the drugs in his pocket."[1]  *Id.* at 15–16.

As the government correctly notes, these arguments are unpersuasive.  *See* Aple.

Br. at 21.  Contrary to Johnson's assertion that the government needed to find Johnson's

DNA on the gun to prove that he had actual possession of it, the government could prove

actual possession because Johnson was touching the gun by sitting on it in the vehicle,

thereby securing it under his body and hiding it from the Officers' view.  Moreover,

Johnson's assertion that he did not necessarily need to handle the gun to sit on it—or that

directly sitting on the gun was somehow different than it being found "on his person"—

---

[1] In Johnson's reply brief, Johnson argues that even though the record shows that he was sitting on the gun, he needed to hold the gun (presumably in his hands) because "touching the gun with his leg or buttocks would not constitute holding for actual possession in any circuit."  Reply Br. at 3–4.  Johnson also asserts that he "lacked direct physical control of the gun under or near his body while he was using his hands to drive the car and hold a beer bottle."  *Id.* at 9.  In support, Johnson cites *United States v. Smith*, 997 F.3d 215, 224 (5th Cir. 2021), and *United States v. Lane*, 267 F.3d 715, 718 (7th Cir. 2001).

But these cases do not suggest that directly sitting on top of a gun would not constitute holding for actual possession or that actual possession can only be satisfied by holding a gun in one's hands.  In *Smith*, the Fifth Circuit stated that it was error to convict on mere touching alone when the only evidence of actual possession was the defendant's admission that "he had seen and touched the firearm at a friend's house prior to [the detective] recovering the firearms."  997 F.3d at 220 n.6; *see id.* at 220–25.  And in *Lane*, the Seventh Circuit determined that holding a gun by itself is *a factor* indicating actual possession, not a requirement, and the Seventh Circuit explicitly "[did] not address whether touching a gun as opposed to holding a gun mandates the same result."  267 F.3d at 718–19.

4

muddles the issue with semantics: Johnson was "holding" the gun, for actual possession

purposes, because he exercised direct physical control over the gun while sitting directly

on top of it.[2]  Finally, the fact that other individuals may have had access to the vehicle

does not undermine Johnson's actual possession of the gun.  *See* ROA, Vol. III, at 410–

14.  When the Officers confronted Johnson, he had direct physical control of the gun by

sitting on it throughout his entire interaction with the Officers until he exited the vehicle.

*See id.*, at 309–10, 636–37.

Johnson cannot carry his burden under the third prong of the plain-error test.  In

light of the strong and undisputed evidence that Johnson had actual possession of the gun,

---

[2] As the government correctly details, this court has stated in dicta that a defendant's holding of a firearm for "a mere second or two" qualifies as actual possession of a firearm, but the caselaw is not clear as to whether this is *sufficient* to establish actual possession or is *required* to establish actual possession.  *See* Aple. Br. at 17–20, 18 n.2 (collecting cases and analyzing the "holding" rule in Tenth Circuit caselaw).  *Samora*, 954 F.3d 1286, suggested that the "holding" rule was a requirement, but *United States v. Veng Xiong*, 1 F.4th 848 (10th Cir. 2021), suggested that holding the firearm for a mere second or two was sufficient but not required to convict.

Regardless, I do not think this issue needs to be resolved here because the government satisfies the "holding" rule under either definition.  Johnson's touching of the gun with his buttocks or legs was tantamount to "holding" the gun because he was keeping it, retaining it, and maintaining authority over it.  *See Hold*, BLACK'S LAW DICTIONARY (5th ed. 1979) (defining "hold" in part as "[t]o keep; to retain; to maintain possession of or authority over"); *see also United States v. Gantt*, 2020 WL 5653983, at *10 (N.D. Iowa Sept. 23, 2020) (finding defendant "unquestionably 'had knowledge of, and exercised dominion and control over'" two guns he had been sitting on, which officers discovered when they removed him from the vehicle).  By sitting directly on the gun during the entire interaction with the Officers until he exited the vehicle, Johnson certainly "held" (kept/retained/maintained authority over) the gun for more than "a mere second or two."

and the fact that the government relied on an actual possession theory at trial, no reasonable probability exists that had the jury been properly instructed concerning constructive possession, the outcome of his trial as to his gun charges would have been different.