**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 9, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

　　Plaintiff - Appellee,

v.

CHAD ROBERT KOLKMAN,

　　Defendant - Appellant.

No. 22-8004
(D.C. No. 21-CR-00008-ABJ-S)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **BALDOCK**, and **BRISCOE**, Circuit Judges.
_____

Defendant Chad Kolkman pleaded guilty to one count of conspiracy to

distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1),

(b)(1)(A).  In calculating Kolkman's criminal history score and category under the

United States Sentencing Guidelines, the district court counted a Wyoming state

conviction for delivery of marijuana that Kolkman sustained in August of 2000.  The

district court did so because it determined, after considering evidence presented by

the government at Kolkman's sentencing hearing, that Kolkman's incarceration for

that conviction ended less than fifteen years prior to his commencement of the

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

federal conspiracy offense. The district court in turn concluded that its treatment of the 2000 conviction as a countable offense under the Sentencing Guidelines effectively rendered Kolkman ineligible for safety-valve relief pursuant to 18 U.S.C. § 3553(f)(1). The district court sentenced Kolkman to a statutory mandatory minimum sentence of 120 months, to be followed by a five-year term of supervised release.

Kolkman now appeals, arguing that (1) the district court plainly erred in the manner in which it interpreted the safety-valve provision of § 3553(f)(1), and (2) in any event, the district court erred in relying on unreliable hearsay evidence presented by the government at the sentencing hearing and, as a result, erroneously considered his 2000 conviction in calculating his sentence and in determining the applicability of § 3553(f)(1). Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we reject his arguments and affirm the judgment of the district court.

I

*Factual background*

In January 2020, the Cheyenne (Wyoming) Police Department identified five individuals whom they believed had been distributing methamphetamine in the Cheyenne area since approximately August 2019. Those five individuals were John Butler, Elizabeth Hastings, Joshua Eslick, Jiovonne Ayala, and Kolkman. Based on interviews, surveillance, and search warrants of cell phones and internet service providers, law enforcement officials believed that Butler was providing

methamphetamine to Hastings, who then distributed the methamphetamine to Eslick, Ayala and Kolkman for further distribution in the community.

Law enforcement officials continued their investigation through November 2020. In October and November 2020, law enforcement officials, acting pursuant to a warrant issued by the United States District Court for the District of Wyoming, intercepted wire and electronic communications to and from Eslick's and Butler's phones. The intercepted calls and text messages revealed that Butler and Eslick discussed methamphetamine on multiple occasions, and Butler and Eslick each discussed with other individuals the redistribution of methamphetamine in the Cheyenne area. On two occasions in November 2020, Kolkman and Butler spoke by phone about methamphetamine; during one of those calls, Butler agreed to sell two ounces of methamphetamine to Kolkman and also reminded Kolkman that he owed Butler $150.00.

Multiple sources of information obtained by law enforcement officials identified Kolkman as a source of methamphetamine in the Cheyenne area. Further, law enforcement officials performing surveillance observed Kolkman with Butler. Finally, sources of information obtained by law enforcement confirmed that Kolkman purchased approximately ten pounds of methamphetamine from Butler and in turn sold methamphetamine to individuals in the Cheyenne area.

In November and December 2020, law enforcement officials interviewed multiple individuals about Kolkman's drug distribution activities. All of these individuals identified Kolkman as a source of methamphetamine, prescription

opiates, marijuana, and/or heroin.  Witnesses also reported observing Kolkman in possession of a handgun and rifle on multiple occasions.

*Procedural background*

On January 13, 2021, a federal grand jury indicted Kolkman and seven other defendants, including Butler, Hastings, Eslick, and Ayala, for their part in a conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A).  Four of the named defendants, not including Kolkman, were charged with additional offenses (e.g., possession with intent to distribute methamphetamine, felon in possession of a firearm, and possession of a firearm in furtherance of a drug trafficking crime).

On March 24, 2021, a federal grand jury returned a superseding indictment against Kolkman and nine other individuals, including the seven codefendants named in the original indictment and two new defendants.  Count One of the superseding indictment charged all ten defendants, including Kolkman, with conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A).  The superseding indictment alleged, more specifically, that the conspiracy ran "[f]rom about August 2019, through and including on or about November 29, 2020."  ROA, Vol. I at 39.  Four of the named defendants, not including Kolkman, were charged with additional related crimes.

On July 7, 2021, Kolkman entered into a written plea agreement with the government.  Under the terms of that agreement, Kolkman agreed to plead guilty to the conspiracy charge contained in the superseding indictment.  The government

agreed "to recommend" that Kolkman "receive a two-offense-level reduction for acceptance of responsibility," and also "to recommend a sentence at the low end of the applicable advisory Sentencing Guidelines range." ROA, Vol. II at 14–15.

On July 19, 2021, the district court conducted a change-of-plea hearing for Kolkman. During that hearing, Kolkman formally pleaded guilty to Count One of the superseding indictment. Kolkman admitted that he was part of the conspiracy and that "his relevant conduct [involved] at least 500 grams or more of a mixture containing methamphetamine." *Id*. at 39. In discussing his activities, Kolkman stated that he had been "living a normal life," but started drinking again in February 2019 "and then . . . two months later, . . . on . . . Friday, April 20th," 2019, he "relapsed on meth" and at some unidentified point thereafter began selling drugs. Supp. ROA, Vol. 2 at 31.

On August 16, 2021, the probation department prepared and submitted to the district court and the parties a presentence investigation report (the PSR). The PSR, in computing Kolkman's offense level, began by applying a base offense level of 32 pursuant to U.S.S.G. § 2D1.1. The PSR then applied a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) because "[m]ultiple independent sources indicate[d] [Kolkman] possessed a rifle type weapon that shoots rubber bullets which is a dangerous weapon as defined by U.S.S.G. § 1B1.1." ROA, Vol. II at 39. The PSR then applied a two-level decrease pursuant to U.S.S.G. § 3E1.1(a) for Kolkman "clearly demonstrat[ing] acceptance of responsibility," and a one-level decrease pursuant to U.S.S.G. § 3E1.1(b) because Kolkman "assisted authorities in the

5

investigation or prosecution of [his] own misconduct by timely notifying authorities of the intention to enter a plea of guilty." *Id.* These calculations resulted in a total offense level of 31.

The PSR calculated Kolkman's criminal history score to be nine.[1] Three of those points were based on Kolkman's Wyoming state court conviction for delivery of marijuana which was entered by the state court on August 3, 2000.[2] The PSR noted that Kolkman originally received a suspended three-to-five year sentence for that conviction and was sentenced to three years of probation. The PSR noted, however, that Kolkman's probation was revoked on March 14, 2002, "after he was convicted of new traffic violations, was observed consuming alcohol, and failed to attend two treatment appointments." *Id.* at 41. At that time, he was ordered to serve the originally imposed three-to-five year sentence. Kolkman discharged that sentence and was released from custody on August 27, 2004. The PSR concluded: "Given the defendant engaged in the instant offense as early as June 2019, this prior conviction falls within the 15-year time period and receives three points." *Id.*

---

[1] The criminal history score was actually 10, but because U.S.S.G. § 4A1.1(c) directs that only four one-point convictions can be counted, the PSR applied a criminal history score of 9.

[2] The PSR assigned two criminal points for a June 2011 Wyoming state conviction for possession of methamphetamine. The remaining five criminal points were based on separate convictions that Kolkman sustained in Wyoming state court between March and August of 2014 for (1) shoplifting, (2) unlawful possession of a controlled substance and interference with a police officer, (3) theft of services, (4) possession of a controlled substance, and (5) driving under the influence of a controlled substance and driving with a suspended driver's license.

Based on the criminal history score of nine, the PSR determined Kolkman's

criminal history category to be IV.  The PSR in turn determined that, "[b]ased upon a

total offense level of 31 and a criminal history category of IV," Kolkman's

"guideline imprisonment range [wa]s 151 to 188 months."  *Id.* at 55.

Kolkman filed written objections to the PSR.  In particular, Kolkman asserted

that the PSR should not have included three criminal history points for the conviction

that he sustained in 2000:

> The defendant objects to the calculation of 3 criminal history points
> based on his 2000 conviction.  The defendant recognizes that his
> incarceration for that offense may spill into the 15-year time window
> that defines the time period for counting felony offenses.  However, the
> Prosecutor's Statement states an August 2019 beginning date.  Mr.
> Kolkman recognizes that "on or about" language does not mean a
> specific date necessarily.  In this context, though, that specific date
> delineates whether three points are calculated or not.  Mr. Kolkman asks
> under the rule of lenity that these 3 points not be counted.  It certainly
> may be an exercise in splitting hairs, but, nevertheless, his time spent in
> prison is a serious matter.

*Id.* at 65.

The district court held a sentencing hearing on January 4, 2022.  The

government noted at the outset that it "intend[ed] to offer testimony" in response to

Kolkman's objection to the PSR's counting of the 2000 conviction in calculating his

criminal history score and category.  ROA, Vol. III at 9.  The government proceeded

to offer testimony from Craig Sanne, a detective with the Cheyenne Police

Department who was involved in investigating Kolkman's case.  Sanne testified that

in February 2020, he interviewed an informant who, according to Sanne, "ha[d]

always given information that was determined to be accurate and reliable."  *Id.* at 14.

7

Sanne testified that the informant said "[t]hat he was purchasing methamphetamine from . . . Kolkman between June 2019 and December of 2019." *Id*. at 15. Sanne testified that the informant also provided an address for Kolkman and "described . . . Kolkman's vehicle as . . . a full-size gray pickup truck." *Id*. Sanne testified that later that same day, he personally observed Kolkman "driving a 2005 Dodge pickup truck." *Id*. at 16. On cross-examination, Sanne admitted that he had no way of corroborating the dates that the informant gave him regarding when he purchased methamphetamine from Kolkman. Sanne's testimony did not touch upon when the charged conspiracy began or ended.

After hearing Sanne's testimony and the arguments of counsel, the district court concluded that "the evidence [wa]s sufficient" to support the PSR's criminal history calculations. *Id*. at 42. Thus, the district court concluded that Kolkman "ha[d] a Criminal History Category of IV." *Id*. at 45. In doing so, the district court conceded "that those three [criminal history] points for his early felony at age 18 [we]re playing a terrible role" in the PSR's calculations of his criminal history category and, in turn, his advisory Guidelines sentencing range. *Id*.

The district court ultimately determined that Kolkman's total offense level was 29 because it concluded that the evidence was insufficient to support a two-level enhancement that the PSR had proposed for Kolkman possessing a firearm. The district court then granted the government's motion for an "additional three level[]" reduction for "acceptance of responsibility," which brought Kolkman's total offense level down to 26 and resulted in an advisory Guidelines sentencing range of 92 to

115 months. *Id*. at 46. Nevertheless, the district court recognized that Kolkman was subject to a statutory mandatory minimum sentence of 120 months.

After allowing Kolkman to make an oral statement, the district court stated on the record: "Although I think a sentence less than that minimum mandatory would be appropriate in your case, I still believe that the public deserves in this matter a sentence that does reflect incapacitation." *Id*. at 50. The district court also stated:

> I would note, also, that of the people who have been charged in this case, I think this sentence here may be one of the longest for you, and your supplier, because of the particular circumstances of his case, received a sentence less than the guideline minimum mandatory sentence, and he was kind of in charge of the whole conspiracy. So I'm not entirely pleased with what I'm required to do here today.

*Id*. at 52–53.

Ultimately, the district court sentenced Kolkman to the statutory minimum "term of 120 months in [the] custody of the Bureau of Prisons," to be followed by a five-year term of supervised release. *Id*. at 56. The district court also stated on the record, after pronouncing the sentence:

> I would say that, in view of the sentences imposed by codefendants in this case, I would have been — but for the mandatory sentence in this case — inclined to have imposed a sentence at the applicable — low end of the applicable sentence as calculated under the sentencing guidelines.

*Id*. at 59.

Final judgment was entered in the case on January 4, 2022. Kolkman filed a timely notice of appeal.

II

Kolkman argues in his appeal that the district court erred in two respects in imposing the 120-month statutory minimum sentence. First, Kolkman argues that the district court misinterpreted the requirements for safety valve relief under 18 U.S.C. § 3553(f) and, as a result, erroneously concluded that Kolkman was not entitled to be sentenced below the statutory minimum sentence. Second, Kolkman argues that, in any event, the district court erred in considering the 2000 conviction for purposes of calculating his sentence and determining his eligibility for safety valve relief under § 3553(f)(1). As we shall proceed to explain, we conclude that both of his arguments lack merit.

A

In his first argument on appeal, Kolkman argues that the district court misinterpreted the requirements for safety valve relief under § 3553(f) and, as a result, erroneously concluded that Kolkman was not entitled to be sentenced below the statutory minimum sentence. Because Kolkman did not raise this issue in the district court, we review it only for plain error. *See United States v. Johnson*, 46 F.4th 1183, 1186 (10th Cir. 2022). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. (quotation marks and citation omitted). Kolkman bears the burden of establishing all of these factors. *United States v. Sorensen*, 801 F.3d 1217, 1238 (10th Cir. 2015).

Section 3553(f), formally titled "Limitation on applicability of statutory minimums in certain cases," is commonly known as the safety valve provision. It provides as follows:

> Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846), section 1010 or 1013 of the Controlled Substances Import and Export Act (21 U.S.C. 960, 963), or section 70503 or 70506 of title 46, the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that—
>
> (1) the defendant does not have—
>
>> (A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;
>>
>> (B) a prior 3-point offense, as determined under the sentencing guidelines; and
>>
>> (C) a prior 2-point violent offense, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the

11

same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

Information disclosed by a defendant under this subsection may not be used to enhance the sentence of the defendant unless the information relates to a violent offense.

18 U.S.C. § 3553(f) (2018).[3]  Thus, by its plain language, § 3553(f) "renders the [statutory] minimum [sentence] inapplicable" if a defendant proves by a preponderance of the evidence that all five of the conditions listed in the statute are satisfied.  *United States v. C.D.*, 848 F.3d 1286, 1292 n.5 (10th Cir. 2017); *see United States v. Figueroa-Labrada*, 780 F.3d 1294, 1297 (10th Cir. 2015) ("A defendant must satisfy five requirements to be eligible for a reduced sentenced under § 3553(f)'s safety-valve provision."); *United States v. Stephenson*, 452 F.3d 1173, 1179 (10th Cir. 2006) ("The defendant bears the burden of proving by a preponderance of the evidence that he is entitled to the safety-valve adjustment.").

At issue in this appeal is the requirement outlined in the three subsections of § 3553(f)(1).  Kolkman argues that a court must "read the language of . . . § 3553(f) in the conjunctive."  Aplt. Br. at 15.  Consequently, he argues, to be *disqualified* from the safety valve, "a person *must have* [more than 4 criminal history points, excluding

---

[3] Prior to 2018, § 3553(f)(1) barred any defendant with more than one criminal-history point from safety-valve relief.  "In December 2018, Congress passed the First Step Act, which amended § 3553(f)(1) and relaxed its criminal-history disqualifications."  *United States v. Lopez*, 998 F.3d 431, 435 (9th Cir. 2021).

any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines, *and*] a prior 3-point offense *and* a prior 2-point violent offense," and he notes that he "does not have a prior 2-point violent offense."[4]  *Id.* (emphasis in original and added).  The government argues, in opposition, that Kolkman's "reading [of § 3553(f)(1)] is not the sole interpretation that gives the word 'and' conjunctive meaning."  Aple. Br. at 9.  According to the government,

> [a]nother textually sound reading is that Section 3553(f)(1)'s negative prefatory phrase ('the defendant does not have—') modifies each of the items that follow individually, so that, to find the defendant *eligible* for safety-valve relief, the court must find that the defendant *does not have* criminal-history condition (A), *and* the defendant does not have criminal-history condition (B), *and* the defendant does not have the criminal-history condition (C).

 *Id*. (emphasis in original and added).

We need not determine who has the better of the argument because, even if the district court erred in interpreting § 3553(f)(1), its error was not plain.  To date, neither we nor the Supreme Court have addressed the § 3553(f)(1) interpretation issue raised by Kolkman.  In addition, there is currently a split among the other circuits on this issue.  *See, e.g.*, *United States v. Pace*, 48 F.4th 741, 754 (7th Cir. 2022) (holding that "the context of the word 'and' in § 3553(f)(1) supports the view

---

[4] The district court's inclusion of Kolkman's 2000 conviction in its calculation of Kolkman's criminal history score and category impacted Kolkman's eligibility under § 3553(f)(1) in two ways.  First, the 2000 conviction constituted "a prior 3-point offense, as determined under the sentencing guidelines."  18 U.S.C. § 3553(f)(1)(B).  Second, setting aside Kolkman's five one-point convictions, the three points from the 2000 conviction combined with two points from a 2011 conviction for possession of methamphetamine meant that Kolkman had "more than 4 criminal history points."  *Id*. § 3553(f)(1)(A).

that it should be read disjunctively" because "[i]f disqualification results only when a defendant meets each of the subsections, subsection (A) is superfluous."); *United States v. Pulsifier*, 39 F.4th 1018, 1022 (8th Cir. 2022) (holding "that § 3553(f)(1) is satisfied only when the defendant (A) does not have more than four criminal history points, (B) does not have a prior three-point offense, and (C) does not have a prior two-point violent offense"); *Lopez*, 998 F.3d at 437 (the Ninth Circuit concluding that "one of (A), (B), or (C) is not enough," and that, instead, "[a] defendant must have all three before § 3553(f)(1) bars him or her from safety-valve relief."); *United States v. Garcon*, – F.3d –, 2022 WL 17479829 at *1 (11th Cir. Dec. 6, 2022) ("Because the conjunctive 'and' joins together the enumerated characteristics, a defendant must have all three before he is ineligible for relief."). These circumstances all undercut Kolkman's claim of plain error. More specifically, we have long held that "[i]n the absence of Supreme Court or circuit precedent directly addressing a particular issue, a circuit split on that issue weighs against a finding of plain error." *United States v. Koch*, 978 F.3d 719, 726 (10th Cir. 2020) (quotation marks omitted).

We therefore reject Kolkman's claim that the district court plainly erred in interpreting the provisions of § 3553(f)(1).

B

In his second issue on appeal, Kolkman argues that even if the district court did not plainly err in interpreting § 3553(f)(1), "the district court still should have found he met the requirements of 18 U.S.C. § 3553(f) because the government did

14

not produce sufficient [reliable] evidence to count his prior 3-point conviction against him." Aplt. Br. at 16. Kolkman asserts in support that "the government needed to provide reliable evidence to show that [his] conduct in this offense began before August 27, 2019." *Id*. "But," he argues, "the government presented unreliable hearsay that lacked meaningful corroboration."[5] *Id*.

Section 4A1.1 of the Sentencing Guidelines, entitled "Criminal History Category," states in relevant part that "[t]he total points from subsections (a) through (e) determine the criminal history category in the Sentencing Table in Chapter Five, Part A." U.S.S.G. § 4A1.1 (2021). Subsection (a) directs a district court to "[a]dd 3 points for each prior sentence of imprisonment exceeding one year and one month." *Id*. § 4A1.1(a). Application Note 1 to § 4A1.1 addresses how subsection (a) is to be applied and states, in relevant part, that "[c]ertain prior sentences are not counted." *Id*. § 4A1.1 cmt. n. 1 (2021). Application Note 1 further states that "[a] sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted unless the defendant's incarceration extended into this fifteen-year period." *Id*.

---

[5] At oral arguments in this case, Kolkman's counsel argued for the first time that the evidence presented by the government at the sentencing hearing was insufficient to establish that the charged conspiracy existed prior to August 27, 2019, i.e., within the fifteen-year period following his release from custody on August 27, 2004, for his 2000 Wyoming state conviction. We do not consider that argument. *See Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1235 n.8 (10th Cir. 2009) ("An argument made for the first time at oral argument . . . will not be considered.").

Neither we nor any other circuit, as far as we can determine, have addressed the standard of review that applies to a district court's determination of when a defendant commenced the offense of conviction for purposes of applying § 4A1.1. We conclude, nonetheless, that such determination is a factual finding that, like all other factual findings made by a district court at sentencing, is reviewed for clear error. *See United States v. McDonald*, 43 F.4th 1090, 1095 (10th Cir. 2022) ("When evaluating sentence enhancements under the Sentencing Guidelines, this Court reviews the district court's factual findings for clear error."); *United States v. Randall*, 472 F.3d 736, 766 n.1 (10th Cir. 2006) ("This court recognizes the government generally has the burden of showing facts necessary to justify the addition of criminal history points.").

"District courts are not strictly bound by the Federal Rules of Evidence at sentencing hearings." *United States v. Ruby*, 706 F.3d 1221, 1229 (10th Cir. 2013). As a result, "hearsay statements may be considered at sentencing if they bear some minimal indicia of reliability." *Id.* (quotation marks and citation omitted); *see* U.S.S.G. § 6A1.3(a) (providing that "the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."). "Corroborating evidence is often key to determining whether a statement is sufficiently reliable." *Ruby*, 706 F.3d at 1229.

In this case, the informant's statements to Detective Sanne were corroborated in at least three ways. First, Sanne's testimony indicated that he interviewed the

16

informant in person. We have previously noted that in-person interviews can serve as relevant corroboration because they allow law enforcement officers to observe the demeanor of witnesses and, thereby, determine witness veracity. *See United States v. Cook*, 550 F.3d 1292, 1297 (10th Cir. 2008). Second, Sanne testified that the informant "ha[d] been involved in several of [local law enforcement's] cases" and "ha[d] always given information that was determined to be accurate and reliable." ROA, Vol. 3 at 14. Third, Sanne testified that he independently corroborated some of the information provided to him by the informant. *See United States v. Chavez*, 660 F.3d 1215, 1222 (10th Cir. 2011) (holding that anonymous tip by caller bore sufficient indicia of reliability because, in part, an officer "verified some of the information provided by the caller—including that there was a black pickup truck and a white Cadillac in the parking lot"). Specifically, Sanne testified that shortly after he interviewed the informant, he was able to personally confirm that Kolkman lived at the location identified by the informant and that Kolkman drove the pickup truck that was identified by the informant as belonging to Kolkman. ROA, Vol. 3 at 16.

In light of these circumstances, we conclude that the district court did not clearly err in relying on the hearsay statements of the informant in determining that the offense of conviction began prior to August 27, 2019, and, therefore, within the fifteen-year period following Kolkman's release from his Wyoming state conviction for delivery of marijuana.

III

The judgment of the district court is AFFIRMED.


Entered for the Court


Mary Beck Briscoe
Circuit Judge